**UNITED STATES of America,**
**Petitioner/Appellant,**

v.

**GULF OIL CORPORATION,**
**Respondents/Appellee,**

**and**

**Cities Service Oil & Gas Corporation,**
**Intervenor/Appellee.**

No. 5–108.

Temporary Emergency Court of Appeals.

Argued Oct. 26, 1984.

Decided March 29, 1985.

("D.O.E.") subpoena against Gulf Oil Corporation ("Gulf"). The subpoena sought production of documents Gulf had received from Cities Service Oil & Gas Corporation ("Cities") pursuant to a merger agreement between Gulf and Cities. The documents can be generally categorized into two groups: those prepared by or on behalf of Cities in preparation for litigation with the D.O.E., and those prepared by or on behalf of Cities for its auditors, Arthur Young & Company ("Arthur Young"). The district court found that all of the documents at issue were immune from discovery under the work product doctrine, and were therefore not subject to discovery by the D.O.E. We affirm the district court's ruling as to those documents generated in preparation for litigation with the D.O.E.; we reverse in part, however, as to those documents prepared at the request of Arthur Young.

Mona S. Butler, with Carolyn B. Kuhl and Surell Brady, Dept. of Justice, Washington, D.C.; and David A. Engels and Charles Cope, of Counsel, Dept. of Energy, Washington, D.C., were on the brief for petitioner/appellant U.S. of America.

Charles O. Murray, III, with whom John W. Castles, III and Banks Brown, of counsel, Lord, Day & Lord, New York, New York, were on the brief for respondents/appellee Gulf Oil Corp.

Lynn R. Coleman, Douglas G. Robinson and Richard L. Brusca of Skadden, Arps, Slate, Meager & Flom, Washington, D.C.; and Louis Nizer, Gerald F. Phillips, Arthur D. Rheingold and Michael J. McNamara of Phillips, Nizer, Benjamin, Krim & Ballon, New York City; and Gerald H. Barnes Cities Service Oil and Gas Corp., Tulsa, Okl., were on the brief for intervenor/appellee Cities Service Oil and Gas Corp.

Before GARZA, THORNBERRY and MAXWELL, Judges.

GARZA, Judge.

This appeal follows the district court's refusal to enforce a Department of Energy

## I.

In June, 1982, Cities and Gulf entered into a merger agreement. Under the terms of the agreement each company was permitted full access to the business records of the other. The agreement also provided that:

> In the event of the termination of this Agreement, each party will, and will cause its representatives to, deliver to the other all documents, work papers and other material, and all copies thereof, obtained by such party or on its behalf from the other party as a result of this Agreement or in connection herewith, whether so obtained before or after the execution hereof, and will hold in confidence all confidential information until such time as such information is otherwise publicly available or to such extent as has been or may be separately agreed in writing by the parties.

Rec. at 247. The merger was ultimately terminated in August, 1982. However, Gulf obtained the documents at issue in the appeal pursuant to the merger agreement and retained microfilmed copies of the documents subsequent to the termination of the merger agreement.

In May, 1983, the D.O.E. instituted an investigation into certain crude oil pricing transactions Cities had engaged in during 1979 and 1980. The legality of these pricing transactions had been the subject of a declaratory judgment action brought by Cities against the D.O.E. in 1980. *See Cities Service Co. v. Department of Energy,* 520 F.Supp. 1132 (D.Del.1981). At that time, however, the D.O.E. had "expressly declined to take a final position regarding the lawfulness of Cities' transactions." *Id.* at 1140. Consequently, the district court concluded that Cities' claim was not ripe for judicial review and dismissed the case. This court affirmed. *See* T.E.C.A. No. 3–28 (Temp.Emer.Ct.App. August 27, 1982). All of the documents involved in this appeal were generated in connection with, or as the result of, the 1980 declaratory judgment suit, and obtained by Gulf pursuant to the merger agreement between Cities and Gulf.

Cities prepared a number of documents in connection with the 1980 declaratory judgment action against the D.O.E. These documents included letters and memoranda setting forth Cities' in-house and retained counsel's mental impressions and analyses regarding the status of the suit;[1] and documents prepared for presenting the merits of the suit.[2] The D.O.E. concedes that these documents are attorney work product but argues that the work product privilege was waived when the documents were disclosed to Gulf pursuant to the merger agreement.

The remaining documents involved in this appeal were prepared for, and at the request of, Arthur Young. These documents consisted of letters from Cities' general counsel to Arthur Young, and a letter from Cities' general counsel to its controller, a copy of which had been sent to Arthur Young.[3] These documents were generated in response to Arthur Young's request for legal opinions concerning the financial implications of the declaratory judgment suit. Arthur Young required this information in order to complete its annual audit of Cities' financial reports which Cities, as a publicly held corporation, was required to file under the federal securities laws. *See* 15 U.S.C. § 78m.

In July, 1983, having begun its investigation into Cities' pricing transactions, the D.O.E. issued a subpoena to Gulf requesting production of "documents relating or referring to crude oil purchases, sales and exchanges between Cities Service and crude oil resellers and/or traders during the period January 1978 through December 1980." Rec. at 308–310. Gulf, after consulting with Cities, produced a number of documents responsive to the subpoena, but refused to produce documents in which Cities asserted a privilege.

Subsequently, on February 1, 1984, the D.O.E. filed a Petition for Enforcement of Subpoena in the district court for the Southern District of Texas. The district court permitted Cities to intervene. Following a hearing, the district court enforced the subpoena as to those documents in which Cities asserted only an attorney-client privilege; the court refused to enforce the subpoena, however, as to those documents in which Cities asserted a work product privilege. *See* Rec. at 2. The D.O.E. brought this appeal.[4]

---

1. Rec. at 319–22. These documents were identified below as items (b), (c), (h), (i) and (j).

2. Rec. at 319–22. These documents were identified below as items (k), (*l*), (m), (p) and (s).

3. Rec. at 319–22. These documents were identified below as items (d), (e), (f), (g) and (r).

4. Appealing the decision of the district court was not the D.O.E.'s only effort to discover the documents which were prepared originally at Arthur Young's request. On May 8, 1984, three days before the D.O.E. filed its notice of appeal in the instant case, it issued to Arthur Young a subpoena requesting production of documents concerning the pricing transactions which were the subject of Cities' 1980 declaratory judgment action. Arthur Young produced a number of documents responsive to the subpoena, but withheld certain others, some of which are at issue in the instant case, on the grounds that they were protected by attorney-client or work product privileges.

On June 28, 1984, two months after the order was issued in the instant case, the D.O.E. filed a subpoena enforcement proceeding against Ar-

## II.

Although the court below did not conduct an *in camera* review of the documents at issue in this case, its order was based, in part, on the conclusion that the documents were in fact attorney work product. Except as to the documents originally prepared at the request of Arthur Young, the D.O.E. does not challenge this conclusion. To the contrary, the D.O.E. "assumes," and apparently concedes, that the written communications between Cities and its outside counsel [5] and the documents generated for the purpose of presenting the merits of the declaratory judgment action [6] are attorney work product. The D.O.E. contends, however, that any privilege enjoyed by these documents was waived by Cities when it disclosed the documents to Gulf pursuant to the merger agreement and permitted Gulf to retain copies of the documents following the termination of the merger agreement. We do not agree.

The work product privilege, like the attorney-client privilege, may be inadvertently waived through disclosure. The standard for determining whether a waiver has occurred varies, however, depending on which privilege is involved. This distinction was explained in *United States v. American Tel. and Tel. Co.*, 642 F.2d 1285 (D.C.Cir.1980) ("AT & T"):

> The attorney-client privilege exists to protect confidential communications, to assure the client that any statements he makes in seeking legal advice will be kept strictly confidential between him and his attorney; in effect, to protect the attorney-client relationship. Any voluntary disclosure by the holder of such a privilege is inconsistent with the confidential relationship and thus waives the privilege.
>
> By contrast, the work product privilege does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent. The purpose of the work product doctrine is to protect information against opposing parties, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation.... A disclosure made in the pursuit of such trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege.

thur Young in the district court for the Northern District of Oklahoma. As in the instant case, Cities intervened. The Oklahoma court held that with several minor exceptions, the documents the D.O.E. sought to discover were protected by the attorney work product privilege and were not discoverable by the D.O.E. *See United States v. Arthur Young & Co. and Cities Service Oil and Gas Corporation*, No. 84-C-606-B (N.D.Okla. Oct. 5, 1984). The D.O.E. filed its notice of appeal from the judgment of the Oklahoma district court on November 5, 1984. However, on November 21, 1984, the parties to that appeal, at the request of the D.O.E., stipulated to a voluntary dismissal of the appeal. This court ordered dismissal of the appeal with prejudice on November 26, 1984.

Because several of the documents involved in *United States v. Arthur Young* are also involved in this case, we requested additional briefing on the issue preclusion question raised by the voluntary dismissal of the appeal from the order issued in *Arthur Young*. Cities argues that the doctrines of res judicata and collateral estoppel bar the D.O.E. from prosecuting this appeal. While we do not approve of the D.O.E.'s forum shopping in its discovery efforts, we are hard-pressed to find that it is barred from litigating the issues raised in this appeal as a result of having suggested and stipulated to a voluntary dismissal of the *Arthur Young* appeal. Collateral estoppel and res judicata serve to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). Even assuming that the facts of this case otherwise allow for an application of one of these doctrines, we refuse to do so because none of the purposes referred to above are present at this stage of the litigation. To the contrary, by suggesting a dismissal of the appeal of the Oklahoma district court's order, the D.O.E. was furthering the goals of preventing duplicative litigation and conserving judicial resources.

5. These documents were identified below as items (b), (c), (h), (i) and (j).

6. These documents were identified below as items (k), (*l*), (m), (p) and (s).

*Id.* at 1299 (footnotes and emphasis deleted); *see also Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 593 (3rd Cir.1984). The court further explained that in determining whether a disclosure is fatally inconsistent with maintaining the privilege, the existence of "common interests" between the transferor and transferee should be considered. *See AT & T,* 642 F.2d at 1299. A transfer made to a party with "strong common interests in sharing the fruit of trial preparation efforts," or such a transfer made concurrently with a guarantee of confidentiality, does not necessarily constitute a waiver of the work product privilege. *Id.* at 1299–1300.

■ Applying these guidelines to the instant case, it is apparent that Cities did not waive the work product privilege attached to these documents by disclosing the documents to Gulf pursuant to the merger agreement. Gulf and Cities were obviously not adversaries at the time of the disclosure. To the contrary, they were in the initial stages of becoming parent and subsidiary. Consequently, Gulf had a legitimate, nonadversarial, interest in reviewing Cities' attorneys' work product generated in connection with the declaratory judgment action. Had the merger been consummated, the common interests would have been even stronger. Moreover, the disclosure was made pursuant to a guarantee of confidentiality. As pointed out by the *AT & T* court, disclosure under such a condition strengthens the case against waiver. It should also be noted that Cities sought to enforce its contractual right to have the documents returned following the termination of the merger talks, going so far as to threaten judicial enforcement of the contract, before acquiescing in Gulf's demand to retain microfilmed copies of the documents under a continuing promise of confidentiality. It is inapposite that an adversarial relationship ultimately developed between Cities and Gulf. This was not the case at the time the disclosure was made.

We therefore affirm the district court's conclusion that the work product privilege attached to these documents [7] was not waived by virtue of their disclosure to Gulf.

## III.

The D.O.E. next argues that the remaining documents involved in this appeal,[8] those originally prepared at the request of Arthur Young, were never impressed with a legally recognized privilege and are therefore discoverable. Cities contends that the documents are work product because their subject matter concerns the declaratory judgment action. Cities also suggests that policy considerations support the conclusion that these opinion letters are not discoverable because they were prepared in connection with a publicly held corporation's efforts to comply with the federal securities laws. The case presents a close question; we are persuaded, however, that these documents do not enjoy work product immunity and are therefore discoverable by the D.O.E.

■ The attorney work product privilege attaches to documents prepared in anticipation of litigation or for trial by a party or his representative. *Hickman v. Taylor,* 329 U.S. 495, 511–12, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947); Fed.R.Civ.P. 26(b)(3). Determining whether a document constitutes attorney work product within the meaning of Rule 26 is often a difficult process. Our inquiry should be to determine "the primary motivating purpose behind the creation of the document." *See United States v. Davis,* 636 F.2d 1028, 1040 (5th Cir.1981). If the primary motivating purpose behind the creation of the document is not to assist in pending or impending litigation, then a finding that the document enjoys work product immunity is not mandated.

■ Under this standard, we are not persuaded that the documents involved here qualify as attorney work product. These

---

**7.** We reach this conclusion as to those documents identified at trial as items (b), (c), (h), (i), (j), (k), (*l*), (m), (p) and (s).

**8.** That is, those documents identified at trial as items (d), (e), (f), (g) and (r).

documents were not created to assist Cities in the litigation of its declaratory judgment action against the DOE. Rather, they were created, at Arthur Young's request, in order to allow Arthur Young to prepare financial reports which would satisfy the requirements of the federal securities laws.

Our conclusion is reinforced by the Fifth Circuit's decision in *United States v. El Paso Co.,* 682 F.2d 530 (5th Cir.1982), *cert. denied,* — U.S. —, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984). In that case, the Internal Revenue Service ("I.R.S.") sought discovery of documents ("tax-pool analysis") concerning El Paso Company's contingent tax liabilities. The tax-pool analysis was prepared by El Paso. As in this case, federal securities laws required El Paso to include in its financial statements estimates of contingent tax liabilities; the tax-pool analysis was created for the purpose of calculating these liabilities. *See id.* at 534. The court held that even assuming the documents qualified for work product protection, no such protection attached to the documents because they were not prepared in anticipation of litigation. *Id.* at 542. The court explained that:

> El Paso establishes its non-current tax account to bring its financial books into conformity with generally accepted auditing principles. The desire to please the accountants, in turn, is compelled by the securities laws. The primary motivating force behind the tax-pool analysis, therefore, is not to ready El Paso for litigation over its tax returns. Rather, the primary motivation is to anticipate, for financial reporting purposes, what the impact of litigation might be on the company's tax liability. El Paso thus creates the tax-pool analysis with an eye on its business needs, not on its legal ones.

*Id.* at 543. This reasoning is similarly explicative of why Cities created the documents it delivered to Arthur Young. Consequently, we hold that these documents do not constitute attorney work product because they were created primarily for the business purpose of compiling financial statements which would satisfy the requirements of the federal securities laws.

Cities also argues that policy considerations justify a conclusion that these documents are impressed with the work product privilege. It is suggested, for example, that as a result of our holding lawyers will be less than candid when communicating to auditors of publicly held corporations their assessments of pending or impending lawsuits. An analogous argument was asserted in *El Paso Co.,* 682 F.2d 530. It was there asserted that compelling disclosure of the documents containing tax-pool analysis would cause publicly held corporations to "conceal tax-pool analyses from their auditors" thereby "obstruct[ing] the full and frank disclosure of financial information that the securities laws envision." In rejecting this contention, the court concluded:

> El Paso paints a picture of corporations evading their responsibilities under the securities laws to prepare their financial books properly and to lay open their books and records to independent auditors. We do not join El Paso in assuming that corporations will dishonor their legal obligations by discontinuing the preparation of tax-pool analyses.

*Id.* at 544; *cf. In re John Doe Corp.,* 675 F.2d 482, 489 (2d Cir.1982). We are persuaded that this rationale is applicable in the instant case: there is no reason to believe that attorneys will violate their legal and ethical obligations to render candid and complete opinions in circumstances such as these. Similarly, we reject Cities' contention that our holding does violence to the work product privilege as it exists for publicly held corporations. This is simply not the case; the privilege remains intact for documents which actually constitute attorney work product. We hold only that the documents at issue here were generated for the business purpose of creating financial statements which would satisfy the requirements of the federal securities laws, and are not, consequently, protected by the attorney work product privilege.

## IV.

In conclusion, for the reasons set forth in section III of this opinion, we find that the district court erred in not enforcing the D.O.E. subpoena as to those documents originally generated for, and at the request of, Arthur Young. As to those documents [9] the case is reversed and remanded for further proceedings consistent with this opinion. As to the remaining documents, the district court's order is affirmed.[10]

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

---

9. That is, the documents identified below as items (d), (e), (f), (g) and (r).

10. Cities and certain Cities shareholders brought actions against Gulf following termina-

tion of the merger agreement. Our decision here is, of course, limited to the facts of this case, and we make no ruling as to the waiver issues which may arise in those actions.