**In re HILLSBOROUGH HOLDINGS CORPORATION, et al., Debtors.**

**HILLSBOROUGH HOLDINGS CORPORATION, et al., Plaintiffs,**

**v.**

**The CELOTEX CORPORATION, et al., Defendants.**

**Bankruptcy Nos. 89–9715–8P1 to 89–9746–8P1.**

**Adv. No. 90–003.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 13, 1990.

Don Stichter, Tampa, Fla., and Michael J. Crames, New York City, for debtors.

Charles Ketchey, Tampa, Fla., for movant.

### ORDER ON MOTION FOR PROTECTIVE ORDER

ALEXANDER L. PASKAY, Chief Judge.

THE MOTION under consideration filed in the above-captioned adversary proceeding brings into play the extent and reach of the time-honored attorney-client privilege and the judicially created shield against

discovery, known as the "work product" doctrine, first articulated by the Supreme Court in the case of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed 451 (1947).

The Motion was filed by Robert J. Rosenberg (Rosenberg) and his law firm, Latham & Watkins, both of whom were major players in a highly complex leveraged buyout (LBO) transaction whereby Kohlberg, Kravis, Roberts & Co. (KKR) ultimately acquired the controlling interest in Hillsborough Holdings Corporation and its direct and indirect subsidiaries, the Debtors involved in the above-captioned Chapter 11 case. In order to put the Motion under consideration in the proper focus, a brief recap of certain undisputed facts which are relevant should be helpful.

It appears that in March 1987, prior to the closing of the LBO transaction, JWC retained Mr. Rosenberg and his law firm, Latham & Watkins, who were requested to prepare an opinion letter addressed to Deloitte, Haskins & Sells (Deloitte), certified public accountants. The purpose of the opinion letter was to state whether or not, in the opinion of Mr. Rosenberg, JWC had a potential liability for the asbestos-related personal injury claims already asserted against JWC and, at that time, its wholly owned subsidiary, Celotex.

It is without dispute that the only assignment given to Mr. Rosenberg by JWC was to prepare this opinion letter. The opinion letter prepared by Mr. Rosenberg states, inter alia, that it was prepared for the use and "solely in connection with [Deloitte's] rendering a solvency letter in connection with the acquisition of [JWC] by a group of investors organized by Kohlberg Kravis Roberts & Co." The letter stated further that the facts and conclusions stated in the letter should not be relied upon in that the opinion letter was prepared for the sole purpose of advising Deloitte about the solvency vel non of JWC. It is without dispute that this opinion letter was submitted to Deloitte, to the Debtor and its subsidiaries, and to all potential lenders who sought to participate in financing the LBO transaction and the acquisition of JWC by the Debtor, Hillsborough Holdings Corporation (HHC).

The Motion under consideration is filed in Adversary Proceeding No. 90–0003, in which the Debtors seek a determination by this Court that under applicable law the corporate veil between Jim Walter Corporation (JWC) and the Celotex Corporation (Celotex) may not be pierced; thus, neither JWC, nor ultimately these Debtors, are liable for asbestos-related personal injury claims asserted against Celotex.

As discovery in this proceeding commenced, counsel for the asbestos-related personal injury claimants sought to depose Mr. Rosenberg and his law firm, Latham & Watkins, to elicit the underlying facts and circumstances on which Mr. Rosenberg's conclusion stated in the opinion letter was based. In addition, counsel for the asbestos-related personal injury claimants sought, via a subpoena duces tecum, the production at the deposition of all documents and materials examined by Mr. Rosenberg, upon which the conclusions expressed in the opinion letter were relied on. Counsel also sought the production of any listings, compilations or summaries, all other documents relating to the opinion letter, and any engagement letter from JWC or others employing the law firm of Latham & Watkins to act as counsel in connection with the LBO transaction.

Mr. Rosenberg appeared at the deposition for himself and also on behalf of his law firm, Latham & Watkins. However, counsel for JWC repeatedly invoked the attorney-client privilege and instructed Mr. Rosenberg not to answer certain questions. In addition, counsel for JWC urged that the information sought to be elicited from Mr. Rosenberg is covered by the work product doctrine and therefore not subject to discovery. Throughout the deposition, counsel for KKR and HHC also repeatedly invoked the attorney/client privilege on the basis that the interests of their clients were indistinguishable · from the interests of JWC, although neither Mr. Rosenberg nor his law firm were retained by either HHC or KKR.

The claim of attorney-client privilege and its scope and its reach were consistently stated by counsel for JWC:

It is Jim Walter's position that what an attorney does once they [sic] are hired by a client, including interviews of witnesses, gathering of materials within the company, gathering the material outside the company, interviewing witnesses outside the company, all of that, is protected in the first instance as communication [protected by the attorney-client privilege]; and in the second instance a decision about what is important and what is not is at the core of what the attorney's thought processes are.

KKR and HHC took a similar position.

■ It should be pointed out at the outset that parties are entitled to obtain discovery regarding any matter, which is not privileged, which is relevant to the subject matter involved in the pending action, whether or not the information sought is admissible in evidence so long as it might lead to the discovery of facts which are admissible in evidence. Fed.R.Civ.P. 26(b)(1) as adopted by Bankruptcy Rule 7026(b)(1). The rules of discovery were designed to eliminate trial by ambush and to assure speedy, expeditious resolution of controversies on a level playing field where both sides have access to information which is helpful in a truth-seeking process and helps promote a just and fair resolution of controversies.

■ It is well established that one who seeks to invoke the privilege has the burden to prove that the specific communication or documents sought to be discovered fall within the protection of the attorney-client privilege. *In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir.1987); *In re Grand Jury Subpoena*, 788 F.2d 1511, 1511–12 (11th Cir.1986); *In re Grand Jury Proceedings in Matter of Freeman*, 708 F.2d 1571, 1575 (11th Cir.1983). Moreover, invocation of the privilege must be specific and must be asserted on a question-by-question or document-by-document basis; blanket claims of privilege will not justify a wholesale refusal to testify or produce documents in response to a request. *In re Grand Jury Subpoena*, 831 F.2d 225, 226–27 (11th Cir.1987); *United States v. Davis*, 636 F.2d 1028, 1043 n. 20 (5th Cir.), *cert. denied*, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983). There is no question that privilege is not a favored evidentiary concept. Obviously, the privilege serves not to enlighten, but rather to obscure the truth, and for this reason it should be construed as narrowly as possible. *United States v. Suarez*, 820 F.2d 1158, 1159 (11th Cir.), *cert. denied*, 484 U.S. 987, 108 S.Ct. 505, 98 L.Ed.2d 503 (1987).

Keeping the foregoing general principles in mind, one must consider whether and to what extent the attorney-client privilege protects information sought to be elicited from Mr. Rosenberg and from his law firm by counsel for the asbestos-related personal injury claimants.

■ The initial inquiry must start with the proposition that the privilege protects only disclosures of communications between the client and the attorney made in confidence; it does not protect disclosure of the underlying facts revealed which were communicated to the attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 395, 101 S.Ct. 677, 66 L.Ed.2d 584, 594 (1981). For the communication to be privileged, it must not only be intended to be confidential, but it must, in fact, be confidential. If the information is disseminated to others, either by the client or by the attorney with his client's consent, the communication loses its protective cloak and it is no longer privileged. For instance, when a client communicated information to his attorney based on which the attorney drafted a prospectus for a proposed private placement of limited-interest partnerships, the Fourth Circuit held that the attorney-client privilege did not apply to any of the communications because the communications were made by the client to the lawyer with the express understanding that the same would be disseminated to the public and there was no intention that the communication be kept confidential. *In re Grand Jury Proceedings*, 727 F.2d 1352, 1358

(4th Cir.1984). There is substantial authority to support the proposition that the privilege does not apply to information imparted by the client to an attorney when it is understood by both that the information would be disseminated and released to others. *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir.), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976); *accord United States v. Aronson*, 781 F.2d 1580, 1581 (11th Cir.1986) (per curiam).

■ The inquiry sought in the present instance relates to the facts which formed the basis for Mr. Rosenberg's conclusion stated in the opinion letter to the effect that JWC is not liable to the asbestos-related personal injury claimants. In his opinion letter, Mr. Rosenberg stated that in order to assist him in preparing the opinion letter, he received copies of records (original or certified in some cases), reports, and other documents, and judicial and administrative decisions. Mr. Rosenberg considered these documents to be necessary for his review and needed to assist him in forming the basis for his opinions. Several of the items received by Mr. Rosenberg obviously lack the characteristics of any confidential communication. For instance, copies of judicial and administrative decisions clearly lack the characteristic of any confidential communications, and this Court is satisfied that the records, reports, and certificates or documents furnished to Mr. Rosenberg by JWC similarly cannot be considered to have the characteristic of privileged communications. There is hardly any doubt that the questions sought to be elicited from Mr. Rosenberg, while they may not be directly related to the veil-piercing issue, certainly might lead to information which might be relevant as it relates to the intercompany transactions between Celotex and JWC.

■ Based on the foregoing, this Court is satisfied that the broad invocation of attorney privilege by counsel for JWC cannot be recognized and Mr. Rosenberg shall be required to reveal the underlying facts on which he based his opinion stated in the opinion letter.

This leaves for consideration whether any of the documents relied on by Mr. Rosenberg would fall within the "work product" doctrine. Fed.R.Civ.P. 26(b)(3), which has been adopted by Bankruptcy Rule 7026(b)(3), governs discovery in adversary proceedings and provides as follows:

a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule *and prepared in anticipation of litigation or for trial* . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering disclosure of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party *concerning the litigation.*

■ It appears at first blush from the foregoing that before a document or tangible thing which is otherwise discoverable comes within the doctrine of work product, it must be related to litigations actually pending; materials assembled in the ordinary course of business or for other nonrelated purposes, do not fall under the qualified immunity provided by F.R.C.P. 26(b)(3) as adopted by Bankruptcy Rule 7026(b)(3) (see Advisory Committee Notes to 1970 Amendment of F.R.C.P. Rule 26(b)(3)).

■ It is a generally accepted proposition that the doctrine applies only to documents created primarily to prepare for and to assist in the defense or prosecution of an identifiable specific lawsuit which is either pending or has been threatened. Thus, documents generated in an attempt to control and to anticipate a possible production liability exposure of a client were held not to be within the protection of the work product doctrine in the case of *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 400–01 (8th Cir.), *cert. denied*, 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987). Similarly, documents which are created primarily for

the business public rather than to assist in a pending or impending litigation do not come within the work product doctrine. *United States v. Gulf Oil Co.*, 760 F.2d 292, 296–97 (Temp.Em.Ct.App 1985); *Southern Film Extruders, Inc. v. Coca-Cola Co.*, 117 F.R.D. 559, 562 (M.D.N.C. 1987).

▪ There is hardly any question in this case that the information sought to be elicited and the documents sought to be produced were not in connection with any pending litigation or with the defense of an impending or possible litigation. Rather, the information was solely for the purpose of assisting Deloitte, the accounting firm, to decide whether the asbestos-related personal injury claims represented a liability of JWC and to include this potential liability in the balance sheet prepared by Deloitte in conjunction with the LBO transaction.

The fact that at that time the suits were already pending against Celotex, a former subsidiary of JWC, a non-debtor, is really of no consequence because Mr. Rosenberg was not representing Celotex and his opinion letter was not prepared in connection with those litigations. The opinion letter plainly states that to the best of JWC's knowledge, no asbestos-related personal injury claims have been asserted or even threatened against JWC. This proposition is confirmed by Mr. Rosenberg in his deposition. Thus, it is clear that Mr. Rosenberg and his law firm intended that the opinion letter would be used solely to assist Deloitte in its preparation of its opinion regarding the solvency of JWC. The fact of the matter is that this letter expressly disavows any other intended purpose on the use of the letter. Thus, the asbestos-related personal injury claimants are certainly entitled to obtain the information concerning the facts which formed the basis of the opinions stated by Mr. Rosenberg in his opinion letter.

Based on the foregoing, this Court is satisfied that the Motion for Protective Order is without merit and therefore, Mr. Rosenberg shall be required to furnish the information requested, with the proviso, however, that the information sought to be elicited must strictly relate to facts on which Mr. Rosenberg based his opinion that the asbestos-related personal injury claims do not negatively impact the solvency of JWC. Accordingly, it

ORDERED, ADJUDGED AND DECREED that the Motion for Protective Order is denied.

DONE AND ORDERED.