Gregory McEWEN and Larry Parker, Plaintiffs,

v.

DIGITRAN SYSTEMS, INC.; Digitran, Inc.; Donald G. Gallent; Loretta P. Gallent; Harris G. Leroy, III, Chris S. Coray; James R. Bryan; and Grant Thornton, Defendants.

Civ. No. 93–C–728G.

United States District Court,
D. Utah,
Central Division.

May 25, 1994.

David W. Scofield of Parsons, Davies, Kinghorn & Peters, Salt Lake City, UT, and Patricia A. Bloodgood of Schatz, Paquin, Lockridge, Grindal & Holstein, Minneapolis, MN, for plaintiff Gregory McEwen.

Thomas R. Karrenberg of Anderson & Karrenberg, Salt Lake City, UT, for plaintiff Larry Parker in Case No. 94–C–23S, which has been consolidated with the instant action.

Gary N. Anderson of Hillyard, Anderson & Olsen, Logan, UT, for defendants Digitran Systems, Inc. and Digitran, Inc.

David R. King of Kruse, Landa & Maycock, Salt Lake City, UT, for defendant Loretta P. Gallent.

Gregory Skabelund, Logan, UT, for defendants Harris G. Leroy, III and Chris S. Coray.

Wallace T. Boyack of Brown, Larson, Jenkins & Halliday, Salt Lake City, UT, for defendant James R. Bryan.

Kent O. Roche of Parsons, Behle & Latimer, Salt Lake City, UT, for defendant Grant Thornton.

Defendant Donald G. Gallent was neither present nor represented by counsel.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the Court on April 27, 1994, pursuant to Rule 26(f) of the Federal Rules of Civil Procedure for a preliminary pretrial and scheduling conference. Plaintiff Gregory McEwen was represented by David W. Scofield of Parsons, Davies, Kinghorn & Peters, and Patricia A. Bloodgood of Heins Schatz & Paquin. Thomas R. Karrenberg of Anderson & Karrenberg, represented plaintiff Larry Parker in Case No. 94–C–23S, which has been consolidated with the instant action. Defendant Digitran Systems, Inc. and Digitran, Inc. were represented by Gary N. Anderson of Hillyard, Anderson & Olsen. Defendant Loretta P. Gallent was represented by David R. King of Kruse, Landa & Maycock. Defendants Harris G. Leroy, III and Chris S. Coray were represented by Gregory Skabelund. Defendant James R. Bryan was represented by Wallace T. Boyack of Brown, Larson, Jenkins & Halliday. Defendant Grant Thornton was represented by Kent O. Roche of Parsons, Behle & Latimer. Donald G. Gallent was neither present nor represented by counsel.

In connection with the scheduling hearing argument was heard relative to the status of certain documents which plaintiffs seek to discover. The documents in large part were prepared by a non-party, Arthur Andersen & Co. ("Arthur Andersen"), and delivered to the law firm of Kimball, Parr, Waddoups, Brown & Gee ("Kimball Parr"), former counsel for all of the defendants except Grant Thornton. Defendants claim the documents are protected by the work product privilege. Memorandums of law and other documents were filed prior to and at the hearing. The Court took the matter under advisement and ordered production of the documents in ques-

tion for *in camera* inspection. Thereafter the documents were delivered to the Court.

Now, after considering the oral arguments of counsel and documentation on file, and having examined the disputed documents *in camera*, the Court determines that further oral argument is unnecessary and renders its Memorandum Decision and Order.

## FACTUAL BACKGROUND

This action involves alleged violations of § 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934, § 12(2) of the Securities Act of 1933, and allegations of common law fraud, negligent misrepresentation, and negligence arising out of representations made in Digitran's financial statements. Plaintiffs claim that the financial statements contained material misstatements, causing Digitran's stock to decrease in value when this information came to light.

In May 1993, the SEC began investigating Digitran. The SEC suspended trading in Digitran's stock because it questioned whether Digitran had properly reported revenues in its 1992 and 1993 financial statements. Digitran's auditor, Grant Thornton, withdrew its opinion with respect to Digitran's financial statements. In the months that followed, Digitran attempted to restate its financial statements so that it could re-list its stock on the American Stock Exchange, and began searching for another auditor. In late July 1993, Digitran met with Arthur Andersen and invited submission of a proposal to provide audit, tax and advisory services to Digitran. In August 1993, the subject action was filed, and in September 1993, Digitran hired the Kimball Parr firm to represent Digitran and the individual defendants in connection with the SEC's investigation and the pending lawsuit. Subsequently, on or about October 5, 1993, Kimball Parr was authorized by Digitran to engage Arthur Andersen to perform certain accounting procedures and render a report on the results of that work. Thereafter, Kimball Parr substantially incorporated that report into a communication or proposed communication from Kimball Parr

to the Board of Directors of Digitran. In March 1994 Digitran engaged the accounting firm of Peterson, Siler & Stevenson, and thereafter an 8–K report was filed with the SEC.

The present dispute has to do with the discoverability of certain materials created by the accounting firm of Arthur Andersen and the law firm of Kimball Parr. In this connection a subpoena was served upon Arthur Andersen on November 8, 1993 requiring production of documents in its possession. The subpoena specifically excluded from its purview "documents subject to the attorney-client privilege." Kimball Parr responded by letter dated November 18, 1993 that the documents requested in the subpoena were "privileged and/or protected by the attorney-work [sic] product doctrine," and that Arthur Andersen had been retained by itself, not Digitran, "to assist Kimball, Parr in rendering legal advice and providing legal services to Digitran." Also, defendant Loretta Gallent and Richard G. Brown, a partner at Kimball Parr, have submitted affidavits to the effect that Arthur Andersen was hired to assist Kimball Parr in representing Digitran in the SEC investigation and in this lawsuit.

On February 10, 1994, responsive to a motion filed by plaintiffs, this Court issued an Order to Show Cause "why the documents set forth in the subpoena duces tecum should not be produced." At a hearing on February 14, 1994, on the Order to Show Cause, Digitran and Arthur Andersen were ordered to prepare a privilege log describing the documents as to which a privilege was claimed. On March 10, 1994, a privilege log was filed and served with a cover letter from Kimball Parr, who at that time represented Digitran and the individual Digitran defendants. In the privilege log reliance for protection against production was placed entirely on the work product privilege.[1] Accordingly, as to the documents in question no issue is raised as to possible applicability of the attorney-client privilege. In all events, however, it is apparent under the facts presented that the attorney-client privilege as to the subject

---

1. The only assertion of attorney-client privilege in the privilege log concerns a communication from in house counsel for Arthur Andersen to Arthur Andersen dated February 11, 1994. The parties have agreed that this particular communication need not be produced.

documents was waived by Digitran and the individual Digitran defendants.[2]

The privilege log identified the following documents as to which the work product privilege is asserted:

| DATE | AUTHOR | RECIPIENT | DOCUMENT DESCRIPTION | ATTY–CLIENT | WORK PRODUCT |
|---|---|---|---|---|---|
| *10/5/93 | AA & Co. | KPWB & G | Engagement letter | | X |
| 10/22/93 | AA & Co. | AA & Co. File | Dictated notes re review of workpapers and supporting documentation | | X |
| 10/23/93– 11/5/93 | KPWB & G | AA & Co. | Various drafts of report from KPWB & G to Digitran | | X |
| 10/25/93 | KPWB & G | AA & Co. | Draft letters | | X |
| 11/3/93– 11/31/93 | AA & Co. | KPWB & G | Various drafts of report to KPWB & G and supporting schedules | | X |
| *11/16/93 | PBB | AA & Co. | Draft 8–K report for AA & Co. review | | X |
| 11/18/93 | KPWB & G | AA & Co. | Faxed draft report for review | | X |
| 11/18/93 | AA & Co. | PBB | Faxed accounting literature from AA & Co. to PBB relevant to AA & Co. engagement | | X |
| 11/93– 1/31/94 | AA & Co. | AA & Co. File | Workpapers file supporting AA & Co.'s draft reports to KPWB & G | | X |
| **2/11/94 | AA & Co. | AA & Co. In House | Fax communications with AA & Co. in house counsel re Order to Show Cause | X | |

* These documents have been produced to plaintiffs, and defendants do not seek work product doctrine protection.
** The parties have agreed that this particular communication need not be produced.

---

At the initial pretrial conference on March 22, 1994, as well as the hearing on April 27, 1994, plaintiffs' counsel articulated objections and pointed out certain alleged deficiencies in Kimball Parr's privilege log. The *in camera* review conducted by the Court reveals extensive accounting analysis regarding the manner in which Digitran recorded revenues and how such revenues would have been reported under Arthur Andersen's interpretation of the percentage completion method. In this regard, a report was submitted by Arthur Andersen to Kimball Parr, and a very similar report was submitted or was to be submitted by Kimball Parr to the Board of Directors of Digitran. The "engagement letter" dated October 5, 1993, in which Arthur Andersen confirms its engagement by Kimball Parr, is silent as to the ultimate purpose of the reports. That letter simply sets forth the understanding of Arthur Andersen as to arrangements by and between Digitran, Kimball Parr and Arthur Andersen, in which Arthur Andersen was to

> perform agreed-upon procedures and render a report on the results of that work in connection with your (Kimball Parr's) engagement by the Board of Directors of Digitran Systems, Incorporated ("Digitran") to perform agreed-upon procedures relating to certain books and records of Digitran and to report the findings with respect thereto to the Board of Directors.

---

2. The Tenth Circuit has held that failure to comply with F.R.C.P. 34, constitutes a waiver of privilege. *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir.1984); *see also Cun-* *ningham v. Connecticut Mutual Life Ins.,* 845 F.Supp. 1403 (S.D.Cal.1994) (failure to properly assert privilege can result in waiver).

Various drafts of Kimball Parr's report to the Digitran Board of Directors contain the same, cryptic language:

> This firm has been engaged by the Board of Directors of Digitran Systems, Inc. ("Digitran" or the "Company") to perform agreed upon procedures with respect to certain books and records of the Company and to report the findings with respect thereto to the Board of Directors.[3]

There is no reference in the Arthur Andersen report to the SEC investigation or this lawsuit. Neither does the Kimball Parr report to Digitran refer to the SEC investigation or the instant lawsuit. The primary motivating purpose for creation of the documents is not apparent from those reports. Subsequent documents examined *in camera* strongly suggest to the Court that the engagement of Kimball Parr, at least as to the creation of corrective accounting procedures, essentially was to facilitate the efforts of accountants in restating the financial statements of Digitran so that Digitran could re-list its stock. For instance, a faxed transmission from Richard G. Brown of Kimball Parr, to Arthur Andersen, Grant Thornton and the Board of Directors of Digitran dated October 25, 1995, reveals that the dominant efforts of the law firm, at least as related to accounting procedure matters, was to get the accounting firms together so that Grant Thornton would be willing to issue a compatible report with respect to the Digitran financial statements. This was to be done after completion and review by Grant Thornton of the reports of Kimball Parr and Arthur Andersen to the

Board of Directors of Digitran. Then, in a subsequent draft audit report addressed to Digitran, apparently prepared by or for Grant Thornton, which was fax transmitted to Arthur Andersen by Kimball Parr, reasons are set forth for development of the accounting procedures as well as for restatement of Digitran's accounting statements under generally accepted accounting procedures. It is apparent to the court from that communication that the principal motivation for the proposed audit report set forth therein was not primarily related to the SEC investigation or the current litigation.

## ANALYSIS

The work product doctrine, first articulated by the Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 500, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947), is codified in F.R.C.P. 26(b)(3).[4] It is designed to balance the demands of the adversary system by preserving the privacy an attorney requires to prepare for trial. In order for materials to be protected under the doctrine, they must be "prepared in anticipation of litigation or for trial...." F.R.C.P. 26(b)(3). If it appears that the materials were prepared for mixed purposes, the privilege is available only if "the primary motivating purpose behind the creation of the [materials was] to assist in pending or impending litigation...." *United States v. Gulf Oil Corp.,* 760 F.2d 292, 296 (Temp.Emer.Ct.App.1985). This court agrees with the "primary motivating purpose" formulation set forth in *Gulf Oil.*[5]

---

**3.** The draft quoted above is the most recent draft dated November 5, 1993. This is one of the documents for which Kimball Parr and defendants are claiming work product protection. There does not appear to be a final draft of Kimball Parr's report to the Board amongst the Arthur Andersen documents. All drafts contain the following language printed at the top of each page, "CONFIDENTIAL, ATTORNEY/CLIENT, WORKPRODUCT."

**4.** (3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, [which relates to experts,] a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only

upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. F.R.C.P. 26(b)(3) (1994).

**5.** Although the Tenth Circuit Court of Appeals apparently has not adopted the "primary motivating purpose" standard, the following courts within the Tenth Circuit have: *Fine v. United States,* 823 F.Supp. 888, 903 (D.N.M.1993); *Gottlieb v. Wiles,* 143 F.R.D. 241, 253 (D.Colo.

A further principle of importance in the analysis of the work product privilege is the burden of proof: "The party seeking to assert the ... work product privilege as a bar to discovery has the burden of establishing that [such] is applicable." *BarclaysAmerican Corp. v. Kane,* 746 F.2d 653, 656 (10th Cir.1984); *see also Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir. 1985). Clarity of purpose in the engagement letter would help to discharge that burden.[6]

With reference to the work product of accountants, the Tenth Circuit has held that "there is no confidential accountant-client privilege under federal law. Furthermore, in federal cases there is no state created accountant-client privilege." *In re Grand Jury Proceedings,* 658 F.2d 782, 784 (10th Cir. 1981). However, materials produced by an accountant in anticipation of litigation and under the direction of an attorney have been protected by work product immunity. In this regard the Supreme Court has made it clear that the work product doctrine protects "material prepared by agents for the attorneys as well as those prepared by the attorney himself." *United States v. Nobles,* 422 U.S. 225, 239, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975), *see also United States v. Davis,* 636 F.2d 1028, 1043 n. 17 (5th Cir.1981); *In re Grand Jury Subpoena,* 599 F.2d 504, 513 (2nd Cir.1979); *In re Int'l Sys. & Controls Corp. Sec. Litig.,* 91 F.R.D. 552, 556 (S.D.Tex.1981).

■■■ If indeed the Arthur Andersen documents were prepared by Arthur Andersen as Kimball Parr's agent to assist Kimball Parr in representing Digitran in the SEC investigation and/or this lawsuit, and if that was the "primary motivating purpose" for creation of the documents, the work product doctrine would afford protection. The main problem confronted by the Court in its *in camera* review is that it is not absolutely clear from the documents inspected *in cam-*

*era* what the primary motivating purpose was. The suggested accounting procedures may have been meant to meet objections which had resulted in the delisting of Digitran stock earlier that year. On the other hand, the procedures set forth in the documents could have been created to serve as litigation aids to assist counsel in understanding how the claimed accounting deficiencies pointed out in the SEC investigation or alleged in the existing litigation could have been corrected or prevented. It appears that the documents were created after the SEC investigation had commenced and after this lawsuit was filed. When Arthur Andersen confirmed its engagement by Kimball Parr on October 5, 1993, however, it submitted a draft of the very report which supposedly had been ordered or arranged by Kimball Parr. This may well have been developed, in large part, as a result of the initial direct contact between Arthur Andersen and Digitran in late July, prior to the engagement of Kimball Part by Digitran in September or the engagement by Kimball Parr of Arthur Andersen on or about October 5, 1993. In any event, after the October 5, 1993 "engagement letter," there followed contacts and conversations by and between Arthur Andersen, Grant Thornton and Kimball Parr concerning adjustments to be made with respect to certain costs and recognition of revenue in Digitran's historical financial statements. In this regard, Kimball Parr admits that "Arthur Andersen's work was partially aimed at assisting Digitran in persuading its auditors, Grant Thornton, to reissue Digitran's financial statements," but argues that this fact should not affect the applicability of the work product privilege. Letter from Kimball Parr dated March 21, 1994.

The case of *United States v. Gulf Oil Corp.,* 760 F.2d 292 (Temp.Emer. Ct.App.1985), is instructive. In *Gulf Oil,* the plaintiff sought to discover what is commonly

---

1992); *Zulig v. Kansas City Power & Light Co.,* 1989 WL 7901, at 4, 1989 U.S. Dist. LEXIS 1151 at 10 (D.Kan.1989).

**6.** One law review author put it this way: "Clearly the most effective way to guard against inadvertent loss of the protection offered by the work product doctrine is to ensure that management's written authorization to proceed with the investi-

gation identifies, as specifically as possible, the nature of the litigation that is anticipated." Richard H. Porter, *Voluntary Disclosures to Federal Agencies—Their Impact on the Ability of Corporations to Protect From Discovery Materials Developed During the Course of Internal Investigations,* 39 Cath.U.L.Rev. 1007, 1016 (1990).

referred to in the accounting industry as an "opinion letter." An "opinion letter" is issued by an attorney, who opines as to the liability that could result from a lawsuit pending against the audited company. This information must be disclosed in the financial statements of the company being audited. The Fifth Circuit Court of Appeals found that opinion letters, although containing the mental impressions of the company's attorney, do not qualify for work product protection because they are not created in anticipation of litigation, but rather "[a]re created, at [the accounting firm's] request, in order to allow [the accounting firm] to prepare financial reports which would satisfy the requirements of the federal securities laws." *Gulf Oil*, 760 F.2d at 297. In the case at bar, Digitran had a disagreement with Grant Thornton, its previous auditor, and was required to disclose that fact and to sufficiently describe that disagreement in an 8–K report to the SEC. The Arthur Andersen and Kimball Parr reports facilitated the filing of the 8–K report. That 8–K report was to become a public document, and defendants have admitted that the work product doctrine does not apply to it. It appears, as in *Gulf Oil*, that the documents at issue in this case, at least in part became foundational documents in the preparation of the 8–K report which was required for compliance with federal securities laws. In addition, they constituted foundational documentation for the reissued financial statements, which statements were intended to become public documents. In all events, if the primary purpose for creation of the said accounting reports was the re-issuance of Digitran's financial statements, the work product doctrine would not apply.

In the matter *sub judice*, after reviewing all the materials submitted, this Court is not convinced that the "primary motivating purpose" in the creation of the accounting procedures reports and other documents in question was to assist attorneys in connection with pending or anticipated litigation or the SEC investigation as such. To the contrary,

the Court is persuaded that the primary motivating purpose behind the creation of such reports and documents was to enable the re-issuance of Digitran's financial statements in order to re-list Digitran's stock. In all events, Kimball Parr and the Digitran defendants have not sustained the burden of proof to show otherwise. Accordingly, this Court concludes that the subject documents are not protected by the work product privilege.

Based upon the foregoing, it is hereby

ORDERED, that the documents described in the privilege log,[7] which documents were delivered to the court *in camera*, shall be produced to plaintiffs within 15 days following the date of this order.[8]

---

7. This does not apply to documents which previously have been produced, or to the communication between Arthur Andersen and its in house counsel identified in the privilege log.

8. The documents which were delivered to the court may be picked up from Chambers by the party/person which supplied the documents, for production to plaintiffs in accordance with this order.