**RESOLUTION TRUST CORPORATION, a corporate instrumentality of the United States of America, Plaintiff,**

v.

**Richard D. HEISERMAN, et al., Defendants.**

**Civ. A. No. 93–B–944.**

United States District Court, D. Colorado.

Sept. 14, 1993.

Kobayashi & Associates, P.C., John M. Kobayashi, Kathleen M. Kulasza and Linda J. Creagan, and Jeremiah B. Barry, Staff Atty., Resolution Trust Corp., Regional Office, Denver, CO, for plaintiff Resolution Trust Corp.

Vinton, Waller, Slivka & Panasci, Kevin D. Allen, and Margaret M. McClellan, Denver, CO, for defendants Richard D. Heiserman, Patricia A. Heiserman, Richard L. Smith, Heiserman Family Partners, Ltd. and the Heiserman Family Trust.

Bradley, Campbell, Carney & Madsen, Victor F. Boog and Thomas A. Nolan, Golden, CO, for defendant Walter C. Kane.

Bostrom & Sands, P.C., Jon F. Sands and Thomas DeVine, Denver, CO, for defendants Guy E. Boyer and Carolyn P. Boyer.

Defendants David G. Marberry and Nancy A. Marberry, pro se.

Roos, Cohen & Long, P.C., Alvin M. Cohen, Denver, CO, for defendant John C. Root.

Brega and Winters, P.C., Charles F. Brega, Wesley B. Howard, and Carla Minckley, Denver, CO, for defendant Charles R. Babb.

Berryhill, Cage & North, P.C., James R. Cage, Denver, CO, for defendant James D. Grow.

Rothgerber, Appel, Powers & Johnson, Alan W. Anderson, Denver, CO, for defendant John B. Howell.

Ireland, Stapleton, Pryor & Pascoe, P.C., William J. Leone, Denver, CO, for defendants Chester A. Latcham, Jr., Latcham Family Partners Limited, and Latcham Family Trust.

Williams, Youle & Koenigs, P.C., Michael A. Williams and Amy L. Benson, Denver, CO, for defendants William T. McCallum, individually and as a general and limited partner of McCallum Family Partners, Ltd., and as grantor, trustee and beneficiary of the McCallum Family Trust, Leslie A. McCallum, as a general partner and limited partner in McCallum Family Partners, Ltd., McCallum Family Partners, Ltd., McCallum Family Trust, and John D. Clayton and Alan D. MacLennan as trustees of McCallum Family Trust.

Defendant James C. Shearon, pro se.

Robinson, Waters, O'Dorisio and Rapson, P.C., Stephen L. Waters, Denver, CO, for defendants James C. Shearon, in his alleged capacity as a general and limited partner in JCS Family Partners, Ltd., and as a Grantor, Trustee and Beneficiary of JCS Family Trust, and not individually; Carol M. Shearon, as a general and limited partner of JCS Family Partners, Ltd.; JCS Family Partners, Ltd., a limited partnership; JCS Family Trust; and John Does 13, 14, 15 and 16.

Bader & Villanueva, P.C., Jeffrey M. Villanueva, Steven M. Feder, Denver, CO, for defendants Engel & Rudman, P.C., Barry S. Engel, and Ronald L. Rudman.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Before me are the following motions:

1) Officer and director defendants move to require early RTC disclosure pursuant to Fed.R.Civ.P. 16;

2) Defendants Barry S. Engel, Ronald L. Rudman and Engel & Rudman, P.C. (collectively Engel & Rudman) move for a separate trial and to stay the proceedings;

3) Defendants Shearon, as a general and limited partner in JCS Family Partners, Ltd. and as a Grantor, Trustee and Beneficiary of JCS Family Trust; Carol M. Shearon, as a general and limited partner of JCS Family Partners, Ltd.; JCS Family Partners, Ltd.; JCS Family Trust; and John Does 13, 14, 15, and 16 (collectively as Shearon Asset Defendants) move for a separate trial and to stay the proceedings.

These motions are now adequately briefed and were heard September 3, 1993. For the reasons set forth below, the officer and director defendants' motion will be granted, Engel & Rudman's motion will be denied without prejudice and Shearon Asset Defendants' motion will be denied without prejudice.

## II. BACKGROUND:

Capitol Federal Savings and Loan Association (Capitol Federal) was a federally-chartered savings and loan association which had its principal place of business in Aurora, Colorado. On May 4, 1990, the Office of Thrift Supervision declared Capitol Federal insolvent and appointed Resolution Trust Corporation (RTC) as its Conservator. On June 15, 1990, RTC was appointed as Capitol Federal's Receiver.

RTC, in its corporate capacity, asserts claims against Capitol Federal's former officers and directors for negligence, negligence *per se*, gross, willful and wanton negligence, and breach of fiduciary duty of due care. These claims relate to Capitol Federal's un-

derwriting, approval and subsequent administration of its commercial banking and real estate lending program.

RTC also asserts claims against certain Capitol Federal officers and directors for breach of fiduciary duty of loyalty and negligence. RTC contends that these officers and directors diverted Capitol Federal funds to pay personal legal fees to establish trusts and partnerships designed to protect certain directors' assets from creditors. According to RTC, four officers and directors (Richard D. Heiserman, Chester A. Latham, Jr., William T. McCallum, and James C. Shearon) made fraudulent conveyances via this asset planning service. RTC seeks to void these allegedly fraudulent conveyances or, in the event the property cannot be returned or its value has dissipated, RTC seeks the value of the property transferred.

RTC also asserts claims under 12 U.S.C. § 1821(d)(17) and the Colorado Fraudulent Conveyances Act against the Shearon Asset Defendants for their participation in the alleged fraudulent conveyances.

From 1983 to 1990, Engel & Rudman provided legal services to Capitol Federal. Engel & Rudman also provided the asset planning services to Capitol Federal's officers and directors. RTC contends that Capitol Federal was "probably" insolvent when this asset planning service was approved by Capitol Federal's board of directors and when the asset transfers occurred. The claims against Engel & Rudman include breach of fiduciary duty, aiding and abetting breach of fiduciary duty, professional negligence, and negligent misrepresentation.

On July 23, 1993, a Fed.R.Civ.P. 16 scheduling conference was held. One of the issues raised at this conference was whether RTC should be required to disclose their discovery to the defendants early in the proceedings. To allow adequate briefing of this issue, I continued the hearing on this question to September 3, 1993.

## II. LEGAL ANALYSIS

### 1) Officer and director defendants' motion to require early RTC disclosure pursuant to Fed.R.Civ.P. 16.

The defendants ask me to require RTC to disclose, on or before October 1, 1993, the following information and documents for each loan transaction:

a) The specific defendants who are alleged to be liable for that loan;

b) The specific acts which were taken by each defendant which are alleged to be negligent, insufficient, negligent *per se,* or a breach of fiduciary duty;

c) The specific acts which RTC contends should have been taken by each defendant to comply with their responsibilities. RTC shall not simply reallege the complaint or state generally that, e.g., defendant Smith should have prudently reviewed the loan. RTC shall state specifically, and in concrete terms, those actions which should have been taken, e.g., defendant Smith should have read appraisal x, noticed red flag y, understood y's significance, called a second appraiser, moved to reject the application, voted against the loan, etc.,;

d) The identity and a copy of any document which proves the commission of the alleged act of negligence and/or which supports RTC's claim that certain actions should have been taken, but were not. To comply with this requirement, RTC shall not simply designate boxes, files, or categories of documents. It will identify the specific exhibit which proves or tends to prove its allegations;

e) Excepts, identified by page number, from depositions taken by RTC which support RTC's allegations of negligent acts or omissions;

f) The identity of any witness for which no deposition exists, but who will or may support or refute RTC's contentions;

g) A resume and detailed opinions from any expert RTC intends to call;

h) The original loan amount;

i) The date of default on the loan;

j) All payments from any source on the loan and dates of payment;

k) The disposition of all claims against borrowers, guarantors, and collateral

(e.g., released, suit pending, franchised, sold for $___, and the date of disposition);

l) The damages caused by each defendant;

m) Other information requested in pending interrogatories.

Defendants argue that their motion for early disclosure should be granted because the court would benefit, RTC would not be prejudiced, defendants would incur substantial financial hardship without such early disclosure, and their request furthers the purposes of Fed.R.Civ.P. 16. They point out that the bulk of this information has been obtained by the RTC during its three-year investigation into its claims.

RTC objects to defendants' motion on the basis that such disclosure violates the attorney-work product privilege, the disclosure request goes beyond the scope of Fed. R.Civ.P. 16, it is unnecessarily burdensome and expensive, and it would render the current scheduling order largely useless.

To analyze the arguments presented by the parties, I consider the following questions:

a) whether I may order early disclosure of discoverable information;

b) whether the requested disclosures are protected by the attorney-work product privilege;

c) if certain documents are protected by the attorney work-product privilege, does the document request fall within the parameters of factual work-product or opinion work-product; and,

d) if documents requested are factual work-product, do defendants present sufficient basis to support their request for disclosure despite their qualified nature.

## A) Is Early Disclosure of Discoverable Documents Permissible?

■ In opposition to defendants' motion, RTC asserts that the court has already entered a scheduling order which should control the timing of discovery. That scheduling order was preliminary and I set a further scheduling conference for October 22, 1993. The first scheduling order certainly was not set in concrete and can be made substantially more effective through the early disclosure requested.

RTC also contends that orderly disclosure of the specifics of each claim will result when the parties draft the pretrial order. Although that procedure may be orderly, it is not timely under the circumstances of this case. I conclude that early disclosure furthers the objectives of Fed.R.Civ.P. 16 and the local rules of this district and that such disclosure is permissible here.

In 1983, the Federal Rules of Civil Procedure were amended to address the reality of modern litigation by supplementing the traditional powers of the trial judge with broad new powers designed affirmatively and specifically to allow the judge to control the pretrial phases of complex litigation. *In Re San Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d 1007 (1st Cir.1988). *See* Fed. R.Civ.P. 16 advisory committee note (1983 amendments "necessary to encourage pretrial management that meets the needs of modern litigation".) Fed.R.Civ.P. 16 states, in relevant part:

> [T]he court may in its discretion direct the attorneys for the parties ... to appear before it ... for such purposes as 1) expediting the disposition of the action; 2) establishing early and continuing control so that the case will not be protracted because of lack of management; 3) discouraging wasteful pretrial activities; 4) improving the quality of the trial through more thorough preparation, and; 5) facilitating the settlement of the case.

Similarly, in 1992, this district's Local Rules of Practice were amended to promote, among other things, "expedient administration of justice and to eliminate unnecessary and unjustifiable costs and delay in litigation". *See* Preface, D.C.Colo.LR.

Defendants' request expedites the disposition of this action because it permits them to evaluate the merits of RTC's claims early in the proceedings and to file summary judgment motions if appropriate. The quality of any trial is also enhanced because RTC will be required to clearly define, early in the case, its allegations so that the defendants'

discovery and trial preparation focuses on the real disputed issues. Similarly, the requested relief discourages wasteful pretrial activity because defendants will not require discovery of uncontested transactions. The requested relief also increases the possibility for settlement because it conserves the parties' assets and narrows the pertinent issues.

RTC argues that the requested disclosures can wait until a pretrial conference. Although such disclosures *could* await the pretrial conference, they need not. Furthermore, RTC will be required to reveal the names of persons who will or probably will testify at trial and exhibits that it intends to use at trial as they become known. *See State of Colorado ex rel. Woodard v. Schmidt–Tiago Const. Co.*, 108 F.R.D. 731, 735 (D.Colo.1985).

■ Fed.R.Civ.P. 16 expressly authorizes exercise of my discretion to expedite, manage, and facilitate the preparation and resolution of this complex case. I conclude that defendants' request is reasonable, permissible and warranted. I am, however, denying defendants' request to restrict RTC's supplementation of this disclosure. RTC can supplement this disclosure pursuant to Fed.R.Civ.P. 26(e).

**B) Does the attorney work-product privilege preclude defendants' request?**

RTC contends that defendants' motion for early disclosure requires impermissible disclosure of their attorney work-product privilege. They argue that the process of selecting documents represents counsel's mental impressions and legal opinions and, therefore, is to be accorded an "almost absolute" protection from discovery. However, defendants do not seek disclosure of mental impressions of counsel or confidential work product. The information and documents sought in defendants' motion are routinely discoverable in Rule 33 interrogatories and Rule 34 requests to produce documents. Fed.R.Civ.P. 33, 34.

■ Work-product is the attorney's preparation for litigation. *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). Fed.R.Civ.P. 26(b)(3) codifies the work product doctrine which was recognized in *Hickman v. Taylor.*

In relevant part, Fed.R.Civ.P. 26(b)(3) provides:

[A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney ...

■ The burden of proving the attorney-client privilege rests on the party raising that privilege. *Peat, Marwich, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984), *cert. dismissed*, 469 U.S. 1199, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985). A general claim is insufficient to establish the privilege. *State of Colorado ex rel. Woodard v. Schmidt–Tiago Const. Co.*, 108 F.R.D. at 734. Rather, a clear showing must be made by specifying the items or category objected to and the reason for that objection. *Id.* (citing *Peat, Marwich, Mitchell & Co. v. West*, 748 F.2d at 542).

■ Rule 26(b)(3) distinguishes between factual work-product and mental impressions. Factual work-product, unlike mental impressions, is discoverable upon a showing that (a) the party seeking discovery has substantial need for the materials in the preparation of his case; and b) he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Fed.R.Civ.P. 26(b)(3); *U.S. ex rel. Stone v. Rockwell Intern. Corp.*, 144 F.R.D. 396 (D.Colo.1992); *See generally, Natta v. Hogan*, 392 F.2d 686, 693 (10th Cir.1968). In contrast, opinion work-product is normally afforded a very high degree of immunity.

*Boring v. Keller,* 97 F.R.D. 404, 407 (D.Colo. 1983).

In this case, RTC has the burden of proving the existence of the privilege. *See Peat, Marwich, Mitchell & Co. v. West,* 748 F.2d at 542. At this juncture, RTC fails to meet that burden. RTC fails to specify the items or category objected to and a valid basis for the objection. *Id.* Moreover, defendants' request for information and documentation falls within the parameters of Fed.R.Civ.P. 33 and 34. Accordingly, I conclude that the attorney work-product privilege is inapplicable to defendants' early disclosure request.

**C) Assuming arguendo that RTC did state with specificity the documents it alleges are protected by the attorney work-product privilege, would the attorney work-product privilege apply?**

█ The only basis which RTC offers to support its attorney work-product claim is that the process of selecting documents represents counsel's mental impressions and legal opinions. Taken to its logical conclusion, such a claim renders virtually all document requests pursuant to Fed.R.Civ.P. 34 opinion work-product because they reveal an attorney's mental processes.

While there are no 10th Circuit cases addressing this specific issue, two other circuits have considered this question and arrived at opposite conclusions. RTC relies on *Sporck v. Peil,* 759 F.2d 312 (3rd Cir.1985). However, *In Re San Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d 1007 (1st Cir.1988) is considerably more persuasive.

In *Sporck,* the plaintiff requested the identification and production of all documents reviewed by the defendant in preparation for his deposition. The defendant objected on the ground that the grouping of selected documents was attorney work-product that reflected his counsel's opinions and mental impressions as to how the evidence in the documents related to the issues in the case. *Sporck v. Peil,* 759 F.2d at 314. A divided Third Circuit panel agreed with the defendant and categorized the document grouping as "opinion" work-product. The Third Circuit reasoned that in selecting and ordering a few documents out of thousands counsel

could not help but reveal important aspects of his understanding of the case. *Id.* at 316 (citing *James Julian, Inc. v. Raytheon Co.,* 93 F.R.D. 138, 144 (D.Del.1982)).

*Sporck* is distinguishable. First, the lawyer's selection process in *Sporck* was never intended to be revealed at any point in time—the document selection was used only to prepare an attorney's *own* client. Here, RTC readily admits that the documents and information requested will be revealed in any event pursuant to the Court's scheduling order and in its draft of the pretrial order.

Second, *Sporck* dealt with a classic one-on-one discovery dispute. The district court's trial management duties never came into play. This case is considerably more complex and requires extensive management to avoid unnecessary and unjustified discovery costs.

Third, the attorney in *Sporck* selected the documents before plaintiff requested them. The majority placed great weight on this selection process because the court was concerned that an attorney might forgo preparing his client if this selection process was not protected as opinion work-product. Here, RTC is not forgoing any preparation because it concedes that such document production will be forthcoming in any event and, indeed, can be furnished now.

The issue in *San Juan* was whether a magistrate, in a complex litigation case, could order a party to produce to the opposing party the exhibits intended for use at depositions. The court treated this disclosure requirement as ordinary work-product rather than opinion work-product. *In re San Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d at 1019.

The First Circuit upheld the district court's conclusion which was reached after balancing the equities. *Id.* at 1020. The district court ordered this early disclosure because the parties had a substantial need to obtain the materials, the equivalent information was unobtainable through other means without undue hardship, and the court's ability to successfully manage the litigation would be hampered in the absence of the protocol. *Id.* In *San Juan,* the court stated that "not

every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work-product. Were the doctrine to sweep so massively, the exception would hungrily swallow up the rule." *Id.* at 1015 (referring to Judge Seitz' dissent in *Sporck v. Peil,* 759 F.2d at 319).

The court further reasoned that whatever heightened protection may be conferred upon opinion work-product, that level of protection is not triggered unless disclosure creates a real, nonspeculative danger of revealing the lawyer's thoughts. *Id.* Moreover, some materials do not merit heightened protection because despite the revelations they contain as to an attorney's thought processes, the lawyer has had no justifiable expectation that the mental impressions revealed by the materials will remain private. *Id.* For example, answers to interrogatories, counterclaims, admissions, motions, supporting affidavits and the like all reveal to some extent an attorney's mental processes. *Id.* at 1015. Finally, the court emphasized that the key distinction between such material and opinion work-product is that, even absent compelled disclosure, the information sought will probably come to light during the course of trial, if not before. *Id.*

The situation in *San Juan* closely parallels this case. First, *San Juan* was, and this case is, complex. RTC, a federal governmental agency, is suing numerous individuals, limited partnerships and trusts. In addition, more than 50 individuals will be deposed and RTC's investigation, before bringing this action, spanned approximately three years. Second, in *San Juan* the selection process of exhibits was to be revealed in the future and RTC concedes that the information defendants seek here will also be revealed in the future. Third, the documents in *San Juan* were selected for review by third party deponents, not an attorney's own client. In this case, RTC's counsel is required to select documents for the defendants' review, not its own client's use.

Thus, assuming arguendo RTC had demonstrated with specificity that some of the information which defendants' request is protected by the attorney work-product privilege, this information would constitute at most factual work-product, not opinion work-product. In that event, defendants' request, as it related to those privileged documents, becomes subject to the two-part disclosure test in Fed.R.Civ.P. 26(b)(3).

**D) Assuming arguendo that RTC had proved that the factual attorney work-product privilege exists for specific document requests, have defendants presented sufficient evidence to support their request for disclosure despite their qualified nature.**

■ Even if RTC had demonstrated that the selection of certain documents was within the attorney work-product privilege, I conclude that defendants have established need and undue hardship sufficient to overcome the privilege.

■ A litigant may gain access to otherwise privileged information upon showing: 1) substantial need for the materials in the preparation of the party's case; and 2) inability, without undue hardship, to obtain the substantial equivalent of the materials by other means. Fed.R.Civ.P. 26(b)(3). This exception acts as a counterweight to the potentially broad reach of the work-product privilege and prevents its use as a tool to thwart good faith discovery efforts. *State of Fla. ex rel. Butterworth v. Industrial Chemicals, Inc.,* 145 F.R.D. 585, 588 (N.D.Fla. 1991). Application of this exception requires a fact-based inquiry into the needs of the party seeking discovery as well as into the hardship that might be avoided by allowing discovery. *Id.*

Here, it is beyond dispute that the defendants need the information requested. It contains the evidence upon which RTC bases its complaint. For example, this discovery includes: a) the acts which RTC contends were negligent, insufficient, negligent *per se,* or a breach of fiduciary duty; b) the names of the specific defendants who RTC alleges are liable for each act; c) the deposition testimony supporting RTC's claims; and d) the identity of witnesses supporting and refuting RTC's claims. Under these circumstances, the defendants have made a showing sufficient to establish substantial need.

As for the hardship prong of the test, defendants argue and I agree, that this case is complex and involves massive amounts of documentation. It would be extremely difficult, not to mention wasteful, for defendants to attempt to replicate RTC's three-year investigation when the information it seeks is readily available to the RTC.

■ This district's local rules, as well as Fed.R.Civ.P. 1, encourages the just, speedy and inexpensive determination of every action. Thus, the cost of obtaining this discovery through alternative means is a relevant consideration that should be considered in the hardship equation. *See Washington Bancorporation v. Said*, 145 F.R.D. 274, 275 (D.D.C.1992) (the production of FDIC's document index will save defendants time and money, and in a large and complex case, the time and money to recreate the index constitutes substantial need and undue hardship under Rule 26(b)(3)).

The defendants meet their burden of showing Rule 26(b)(3) substantial need and undue hardship. Accordingly, I would grant their motion for early disclosure even if the RTC had shown that certain documents were protected by the attorney factual work-product privilege.

### 2) Engel & Rudman's motion for a separate trial and to stay proceedings.

Engel & Rudman contend that the claims against them should be separated from the proceedings against the officers and directors. They further request that the discovery and proceedings pertaining to those claims be stayed until the officers' and directors' liability is determined. RTC opposes this motion.

■ Pursuant to Fed.R.Civ.P. 42(b), a court may establish separate trials for convenience, to avoid prejudice, or when separate trials will be conducive to expedition and economy. The district courts are given broad discretion in applying this rule and exercise of that discretion will be set aside only if clearly abused. *Easton v. Boulder*, 776 F.2d 1441, 1447 (10th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986).

■ The crux of Engel & Rudman's position is that the claims and damages asserted against them for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, professional negligence, and negligent misrepresentation are contingent upon RTC prevailing on the lending policy claims against Capitol Federal's officers and directors. Thus, they argue, judicial economy and their financial resources would be served better if all discovery, pre-trial proceedings and the trial against them is stayed pending resolution of the claims against the officers and directors.

In opposition, RTC argues, and I agree, that the claims against Engel & Rudman are not necessarily "contingent" upon the success of RTC's claims against the officers and directors concerning their lending policies. If RTC presents evidence, as alleged in their complaint, that Engel & Rudman proposed and was paid for legal services incurred in the asset planning program when Capitol Federal was insolvent, then Engel & Rudman may be liable to RTC absent any imprudent lending policies. Thus, this case could well be prolonged rather than shortened if the claims against Engel & Rudman are separated and stayed pending the outcome of the claims against the officers and directors.

Engel & Rudman further assert that the majority of the discovery, pre-trial proceedings and trial will concentrate on Capitol Federal's lending policies which is irrelevant to the claims asserted against them. They argue that a joint trial will result in unnecessary and substantial burdens and expense. However, at this early stage, this argument is not compelling given the countervailing prospect of burdensome separate trials and duplicative discovery on RTC and the other defendants. Furthermore, my order for early disclosure by RTC mitigates against the financial hardship asserted by Engel & Rudman.

Where, as here, other parties may be prejudiced and forced to incur additional costs, a separate trial of the claims against Engel & Rudman is contrary to the purpose of F.R.C.P. 42(b) to promote judicial economy. Accordingly, I exercise my discretion to deny

Engel & Rudman's motion without prejudice. I will reconsider this motion should the issues and case development justify reexamination.

### 3) Shearon Asset Defendants' motion for a separate trial and to stay proceedings.

 The Shearon Asset Defendants incorporate Engel & Rudman's motion as it pertains to RTC's claims based upon the transfer of property by certain directors to trusts and partnerships and as it pertains to the recipients of the alleged fraudulent transfers. I deny without prejudice Shearon Asset Defendants' motion as well.

The Shearon Asset Defendants support their motion with virtually the same arguments expressed by Engel & Rudman. They contend that judicial resources and economy, as well as the interests of the Shearon Asset Defendants, would be served better if all discovery, pretrial proceedings and the trial concerning the fraudulent transfer issues is stayed pending resolution of the case against James Shearon, as Director.

The Shearon Asset Defendants further contend that the claims against them are not ripe until James Shearon's liability, as a Director Defendant, is resolved. RTC responds that the issues and evidence concerning Mr. Shearon as a director and the liability of the Shearon Asset Defendants are intertwined, not contingent. For example, RTC argues that the evidence as to the defendants' approval of the directors' payment for the asset protection trusts from the Capitol Federal funds for their personal benefit and the making of such decision when Capitol Federal was on the verge of insolvency may be determinative of both the fraudulent conveyances claims and the officer and director claims. Because the same or overlapping discovery, evidence and exhibits at trial will be necessary to prove the fraudulent conveyance claims against the Shearon Asset Defendants as the claims against Mr. Shearon, as a director, I find that judicial resources could be unnecessarily wasted if the claims against the Shearon Asset Defendants' are separated and stayed.

The Shearon Asset Defendants also contend that they will be required to expend an excessive and burdensome amount of time and expense in conducting discovery which is irrelevant to the fraudulent transfer claims. They state that their counsel must attend every minute of every deposition to insure that they are present for all matters relevant to the fraudulent transfer issues. They argue that such a requirement imposes an undue and excessive financial burden on them without any countervailing benefit to RTC.

RTC, on the other hand, argues that Shearon Asset Defendants' "undue and excessive financial burden" is unfounded. In support, RTC states that Mr. Shearon is *pro se* in the action against him as a director. In addition, on July 22, 1993, he entered his appearance as co-counsel for the Shearon Asset Defendants. Because Mr. Shearon will be attending depositions *pro se* as well as on behalf of the Shearon Asset Defendants, the Shearon Asset Defendants' contention that they will be required to expend undue and excessive financial burdens is flawed.

RTC further contends that the discovery propounded to the Shearon Asset Defendants is limited to the fraudulent conveyance issues and asset protection trusts. I agree. In support, RTC provided me with an unsigned copy of the Interrogatories and Request for Production of Documents sent to the Shearon Asset Defendants on or about May 3, 1993. This discovery request is limited to the specific claims against the Shearon Asset Defendants and, thus, it is not burdensome nor excessive.

Because the Shearon Asset Defendants fail to demonstrate at this time that a separate trial is more convenient, fair, or economical, I deny without prejudice their motion to separate their claims and to stay discovery in this action. *Easton*, 776 F.2d at 1447; Fed. R.Civ.P. 42. And, as with Engel & Rudman, the order directing RTC to provide early disclosure mitigates against these defendants' claims of financial hardship. I will reconsider this motion as well should the issues and case development justify reexamination.

Accordingly, IT IS ORDERED THAT:

1) Officer and director defendants' motion to require early RTC disclosure pursuant to Fed.R.Civ.P. 16 is granted.

2) Engel & Rudman's motion for a separate trial and to stay the proceedings is denied without prejudice;

3) Shearon Asset Defendants motion for a separate trial and to stay the proceedings is denied without prejudice;