**Robert H. AULL, on behalf of himself and all others similarly situated, Plaintiffs,**

**v.**

**CAVALCADE PENSION PLAN, et al., Defendants.**

**No. CIV. A. 96–D–628.**

United States District Court, D. Colorado.

April 23, 1998.

Robert F. Hill, John Hathaway Evans, Jr., Hill & Robbins, P.C., William Kieffer Carr, William K. Carr, Attorney at Law, Denver, CO, for plaintiffs.

Howard Shapiro, Heather Magier, Taryn S. Southon, Joan M. Canny, McCalla, Thompson, Pyburn, Hymowitz & Shapiro, New Orleans, LA, James W. Ouzts, Jr., James R. Everson, Messner, Pavek & Reeves, LLC, Denver, CO, Richard L. Murray, Jr., David Allen Burlage, Montgomery, Little & McGrew, Englewood, CO, Christopher J. Koenigs, Dennis Jeremy Herman, Williams, Youle & Koenigs, Denver, CO, Jon R. Steiger, Howard & Howard, Bloomfield Hills, MI, for defendants.

## ORDER ON MOTIONS TO COMPEL AND MOTION FOR PROTECTIVE ORDER

SCHLATTER, United States Magistrate Judge.

This matter is before the Court on motions which address two basic issues: 1) Whether the class Plaintiff is entitled to discover certain information from Defendant Kevin Lewis, and; 2) Whether the class Plaintiff is entitled to an order requiring the law firm of Rothgerber, Appel, Powers & Johnson to comply with a subpoena to produce documentary evidence. The motions resolved by this Order are: 1) the Cavalcade Defendants' motion for protective order, filed October 29, 1997; 2) the class Plaintiff's motion to compel discovery from Kevin Lewis, and opposition to the motion for protective order, filed November 21, 1997, and; 3) the class Plaintiff's motion to compel compliance with subpoena to produce documentary evidence, filed September 26, 1997. The motions have been briefed thoroughly, and I have heard oral argument from the parties involved. For the reasons discussed below, the class Plaintiff's motion to compel discovery from Kevin Lewis is granted, and the Defendants' corresponding motion for protective order is denied. Further, the class Plaintiff's motion to compel compliance with subpoena to produce documentary evidence is granted in part and denied in part.

## FACTS

The Plaintiff, Robert Aull, is acting on behalf of a class of persons who were beneficiaries of the Cavalcade pension plan. The Plaintiff asserts various claims against the Defendants under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq. The claims include breach of fiduciary duty under ERISA, improper calculation and denial of benefits, and violation of ERISA requirements concerning plan amendments and benefit accrual.

In addition, the Plaintiff claims that the Plan and Defendant Kevin Lewis were involved in a transaction prohibited by ERISA. Kevin Lewis purchased a controlling interest in Furr's/Bishop's, Inc .(FBI) in June 1993, via a complex transaction with the previous controlling shareholder, Defendant Michael Levenson, and others. This transaction is described on pages 8—12 of the Plaintiff's motion to compel discovery from Kevin Lewis. FBI's wholly owned operating subsidiary, Cafeteria Operators, L.P. (COLP), sponsored, and was the plan administrator for, the pension plan at issue here, the Cavalcade Pension Plan. Lewis became a member of the Plan Committee in May 1994. Generally, the parties refer to FBI and COLP as the Cavalcade Companies.

The Plaintiff claims Lewis and others engaged in a transaction prohibited by ERISA when Lewis, as Chairman and CEO of FBI, used assets of the Plan to obtain a personal benefit for himself. The Plaintiff says Lewis converted Plan assets to his own use when he negotiated and agreed to an amendment to a master sublease agreement between COLP and Kmart Corporation. In that agreement, Kmart agreed to reduce rents owed by the Cavalcade Companies by $12,000,000. In exchange, Lewis agreed to bring about the dismissal of litigation, *Gonzales v. Kmart,* in which Plan participants sought to recover over $10,000,000 that they claimed Kmart was obligated to transfer to the Plan. In addition, the agreement provided that Lewis would remain as chairman of FBI throughout the period of rent reductions, unless Kmart consented otherwise. The rent reduction period extends to January, 2009. Plaintiff's

motion to compel discovery from Kevin Lewis, Exhibit A, ¶ 5. The Plaintiff claims this provision amounts to an employment guarantee for Lewis, allegedly a personal benefit for Lewis obtained in exchange for the abandonment of the Plan's claim against Kmart.

## I. DISCOVERY FROM KEVIN LEWIS

The Plaintiff has served a request for production of documents on Defendant Kevin Lewis. Cavalcade Defendants' motion for protective order, Exhibit A. The Cavalcade Defendants argue that the class Plaintiffs are not entitled to the information sought because the information is not related to the Plaintiff's claims for relief, and because the discovery sought is not reasonably calculated to lead to the discovery of admissible evidence.

Generally, the parties agree that the discovery the Plaintiff seeks to obtain from Lewis falls into three categories:

*Category A*—Requests 1 through 8 seek production of documents which indicate the manner by which Lewis took control of FBI, and possibly the extent to which Lewis was acting as an agent of an undisclosed principal in taking control of FBI and operating the business.

*Category B*—Requests 9 and 10 ask for documents concerning the compensation Lewis has received from the Cavalcade Companies, and agreements he may have with Cavalcade concerning future compensation and benefits.

*Category C*—Request 11 seeks documents related to a job guarantee the Plaintiff says Lewis received on November 15, 1993, as part of the settlement of the Gonzales litigation with Kmart. Again, the Plaintiff claims this settlement agreement violates ERISA.

### A. Can ERISA liability be imputed via respondeat superior?

■ The Category A requests address the question of whether Lewis was acting as an agent of Fidelity Investments when he took control of, and operated, FBI. The Plaintiff claims this agency issue potentially is relevant because Fidelity may be liable for Lewis' breaches of ERISA duties if Lewis was acting as Fidelity's agent. The Plaintiff does not claim that Fidelity was an ERISA fiduciary. Rather, the Plaintiff says that any liability Lewis may have, based on his actions as an ERISA fiduciary, may be imputable to Fidelity via respondeat superior. The Defendants argue that ERISA liability can not be imputed to Fidelity via respondeat superior, and thus discovery concerning the agency issue is irrelevant.

The United States Court of Appeals for the Tenth Circuit has said that "in ERISA cases the doctrine of respondent (sic) superior could impose liability on a principal for the misdeeds of his agent." *National Football Scouting, Inc. v. Continental Assurance Co.,* 931 F.2d 646, 648 (10th Cir.1991). The Plaintiff argues that this is controlling law in this case. The Fifth Circuit has taken a similar position, noting some limitations on respondeat superior liability for ERISA violations. *American Federation of Unions v. Equitable Life Assurance Society,* 841 F.2d 658, 664–65 (5th Cir.1988).

The Cavalcade Defendants argue that the decision of the United States Supreme Court in *Mertens v. Hewitt Assoc.,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), effectively overruled these positions. In *Mertens,* the Court held that ERISA § 502(a)(3) does not authorize suits for money damages against non-fiduciaries who knowingly participate in an ERISA fiduciary's breach of duty. The Court also expressed doubt that a non-fiduciary can be held liable for breaches of fiduciary duty under ERISA. 508 U.S. at 255 n. 5, 113 S.Ct. 2063. However, the Court expressly reserved decision on this question. *Mertens* did not present a question of respondeat superior liability of a principal for an agent's actions.

Without question, *Mertens* raises serious questions about a plaintiff's ability to extend ERISA liability beyond one who falls within ERISA's definition of fiduciary. However, the *Mertens* dictum does not conclusively resolve the question presented here. Since *Mertens,* the Ninth Circuit has held that certain aspects of state agency law remain applicable to ERISA related claims. *Ward v. Management Analysis Co. Employee Dis-*

*ability Benefit Plan,* 135 F.3d 1276 (9th Cir. 1998). Further, the *Mertens* dictum, however strong, cannot be read as overruling the Tenth Circuit's holding in *National Football Scouting.* In short, under current law, the Plaintiff's agency theory is at least arguable. The Plaintiff is entitled to discovery relevant to this arguable theory.

**B. Are the requests for production to Kevin Lewis relevant to the time period in which Lewis may have acted as an ERISA fiduciary?**

■ The Defendants argue that much of the requested discovery is not relevant to the Plaintiff's claims because the items requested do not concern the time period within which Lewis acted as a fiduciary of the Plan. The Defendants argue that the category A and Category C documents are not relevant to any of Lewis' actions as an ERISA fiduciary because these documents concern events which took place before Lewis was appointed to the Cavalcade Plan committee. Lewis was appointed to the committee on May 16, 1994.

ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan..." *Mertens v. Hewitt Assoc.,* 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). An ERISA fiduciary is anyone who "exercises any discretionary authority or discretionary control respecting management of such plan ...or has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). A person deemed to be a fiduciary is a fiduciary only to the extent that he or she performs one of the described functions. *Johnson v. Georgia–Pacific Corp.,* 19 F.3d 1184, 1187 (7th Cir.1994).

Lewis' status as a plan fiduciary is not keyed solely to his appointment to the Cavalcade Plan committee. Rather, if Lewis, as Chairman and CEO of FBI, exercised discretionary control over administration or management of the Plan, or the distribution of its assets, he may have acted as a fiduciary, even though he had not formally been appointed to the Plan Committee. *See, e.g., Reich v. Stangl,* 73 F.3d 1027, 1029 (10th Cir.1996). Here, the Plaintiff alleges that Lewis, as Chairman and CEO of FBI, traded away a Plan asset, the Plan's claim against Kmart, in exchange for rent reductions for the Cavalcade Companies and for a personal benefit for himself, continued employment by FBI. If the Plaintiff's allegations are true, Lewis arguably exercised discretionary control over an asset of the Plan in completing this transaction. Further, Lewis, as Chairman and CEO of FBI, was a party in interest, for the purpose of ERISA's prohibited transaction provision. 29 U.S.C. § 1106. Under this provision, Lewis may be liable for engaging in a transaction with the Plan from which he obtained a personal benefit.

The Category B and C documents concern the agreement under which Lewis allegedly obtained this personal benefit, as well as the nature and value of the benefit actually obtained by Lewis. These items are relevant to Lewis' alleged role as an ERISA fiduciary, even though he had not formally been appointed to the Plan committee, and to his possible role, as a party in interest, in a transaction prohibited by ERISA. The Category A documents all appear to have been generated before Lewis was appointed to the Plan committee. However, as discussed above, they do concern an arguable theory that any liability Lewis may bear as an ERISA fiduciary, or party in interest, can be imputed to Fidelity. Thus, these documents are relevant to the Plaintiff's ERISA claims.

**C. Do the requested documents relate to a settlor function rather than a fiduciary function?**

■ The Defendants also argue that the documents requested are not relevant to an ERISA claim because they concern settlor functions, which cannot form the basis of ERISA liability, rather than ERISA fiduciary functions. The Defendants argue that the deal in which Lewis agreed to purchase a controlling interest in FBI was simply a business transaction, not a transaction involving Lewis' fiduciary duties. Similarly, the Defendants argue, the documents concerning Lewis' compensation by the Cavalcade companies, and the sublease agreement with Kmart, relate to non-fiduciary business transactions.

As discussed above, Category C documents, concerning the sublease agreement with Kmart, arguably involve both an action by Lewis as an ERISA fiduciary, because he exercised discretion with regard to a substantial Plan asset, and action by Lewis as a party in interest, for the purpose of ERISA's prohibited transaction provision. The Category B and C documents concerning Lewis' compensation are related to the alleged prohibited transaction, because the personal benefit allegedly obtained by Lewis was continued employment, and presumably compensation, by the Cavalcade companies.

Finally, the Category A documents, on their face, do not concern either a fiduciary action by Lewis, or a prohibited transaction. However, as discussed above, the Category A documents relate to the arguable theory that any ERISA liability of Lewis could be imputed to Fidelity. As such these documents are relevant and discoverable.

For the reasons discussed above, the class Plaintiff's motion to compel discovery from Kevin Lewis, filed November 21, 1997, is GRANTED. The Cavalcade Defendants' motion for protective order, filed October 29, 1997, is DENIED.

## II. DISCOVERY FROM ROTHGERBER APPEL POWERS & JOHNSON

The Plaintiff has served a subpoena to produce documentary evidence on the law firm of Rothgerber, Appel, Powers & Johnson (Rothgerber). The subpoena requests four categories of documents which are at issue here:

Category A—Documents that relate to the Gonzalez case;

Category B—Documents relating to the calculation of benefits under or the interpretation of the Cavalcade Pension Plain (the Plan) that were provided or disclosed to actuaries or accountants employed or engaged on behalf of the Plan;

Category C—Documents prepared prior to September 27, 1994 related to interpretation of the Plan or the calculation of benefits under the Plan, and;

Category D—Documents relating to meetings Cavalcade Pension Plan Committee.

Both Rothgerber and the Cavalcade Defendants have objected to the subpoena. Claims of attorney client and work product privilege are the primary issues with regard to these documents.

■ A document is protected by the attorney client privilege if it reveals a communication between a client and an attorney, made in order to obtain or deliver legal assistance, that was intended to be treated as confidential. See In re Grand Jury Subpoena, 697 F.2d 277, 278 (10th Cir.1983). A document is protected by the work product privilege if it was prepared in anticipation of litigation by another party or that party's representative, and was intended to remain confidential. See, e.g., RTC v. Heiserman, 151 F.R.D. 367, 373 (D.Colo.1993); FED. R. CIV. P. 26(b)(3). A party asserting a privilege has the burden of establishing that the privilege is applicable. A party asserting waiver of a privilege has the burden of establishing the waiver. The Plaintiff has argued that the privilege logs submitted by the Defendants and Rothgerber are inadequate. I conclude that the logs generally are adequate, and therefore will resolve this dispute based on the applicability of the claimed privileges.

On October 4, 1996, Judge Daniel issued an Order on some related discovery issues. He concluded that the fiduciary-beneficiary exception allows some discovery of work done by attorneys on behalf of the Cavalcade Plan, so long as the work was in furtherance of the objectives of the Plan and the beneficiaries who participated in the Plan. Plaintiff's reply, filed November 20, 1997, Exhibit A (transcript of hearing on motions for protective orders and motion to compel, October 4, 1996). Judge Daniel concluded that the fiduciary-beneficiary exception is applicable to documents created on or before 9/27/94. Judge Daniel also concluded that there is no privilege between accountants, actuaries and their clients which applies in this case. Id., transcript at pg. 6.

### A. Gonzales Documents

The Plaintiff claims he is entitled to discover all of the documents held by Rothgerber related to Rothgerber's representation of the

plaintiffs in the Gonzales case. Rothgerber has refused to produce 456 such documents, asserting attorney client privilege and work product privilege. Again, in the Gonzales case, eight Plan participants sought to recover over ten million dollars from Kmart, on behalf of the Plan. The Gonzales case was filed as a class action, with a proposed class consisting of all Plan participants. Class certification was denied.

■ 1. *Was Aull a constructive client of Rothgerber in the Gonzales case?* Mr. Aull argues that he was a constructive client of the Rothgerber firm because the Rothgerber firm filed the Gonzales case seeking to represent a class of plaintiffs consisting of all Plan participants. Aull was a Plan participant and thus a member of the proposed class. Aull claims that, as a constructive client of Rothgerber in the Gonzales case, he is entitled to all of the Gonzales documents which Rothgerber claims are protected by the work product or attorney client privileges.

Aull's membership in the proposed class in the Gonzales case does not make him a constructive client of the Rothgerber firm for the purpose of documents otherwise protected by attorney client privilege or work product privilege. Although absent class members have been viewed as constructive clients of class counsel for some purposes, *See, e.g., In re Shell Oil Refinery*, 152 F.R.D. 526, 528 (E.D.La.1989), the connection between an absent class member and class counsel is not so strong that a full fledged attorney-client relationship is established. The Plaintiff has not cited, and the Court is not aware of, any case which holds that absent members of a proposed class, for which certification was denied, are entitled to all attorney client and work product material generated by class counsel. Similarly, the common interest doctrine does not apply because Aull never was a client of Rothgerber with regard to the Gonzales case.

2. *Is Aull entitled to discover the Gonzales documents under the fiduciary-beneficiary exception?* Aull also argues that he is entitled to discover the Gonzales documents, whether or not he was a client of Rothgerber, under the fiduciary-beneficiary exception.

An ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan ... As part of this obligation, the ERISA fiduciary must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan ...An ERISA fiduciary cannot use the attorney-client privilege to narrow the fiduciary obligation of disclosure owed to the plan beneficiaries.

*In re Long Island Lighting Co.*, 129 F.3d 268, 271–72 (2nd Cir.1997) (citations omitted). Again, Judge Daniel previously has ruled in this case that "the fiduciary beneficiary exception will allow some discovery, provided that the attorneys' work was in furtherance of the objectives of the plan and the beneficiaries who participated in that plan." Transcript of October 4, 1996 hearing, p. 5 (exhibit A to Class Plaintiff's Reply, filed November 20, 1997).

■ Aull notes that Alton Smith, a plaintiff in the Gonzales case, also was a Plan fiduciary. Aull says Smith and the other plaintiffs in the Gonzales case pursued the case on behalf of the Plan's beneficiaries, and thus Smith and his attorneys must disclose the Gonzales documents to the class Plaintiff in this case, who also is a plan beneficiary. The Cavalcade Defendants concede that Smith was a member of the Plan committee at the time of the Gonzales case, and thus was a Plan fiduciary. However, the Cavalcade Defendants argue that, as a plaintiff in the Gonzales case, Smith was acting only as a beneficiary of the Plan, and not as a Plan fiduciary. Thus, they argue, the fiduciary-beneficiary exception is not applicable to the Gonzales documents because Smith was not acting as a Plan fiduciary with regard to the Gonzales case.

The plaintiffs in Gonzales repeatedly stated that they were pursuing the case on behalf of the Plan and its participants. They were not seeking relief for themselves individually, except to the extent they might receive greater benefits from the Plan if the Plan was awarded the money they sought to

have Kmart pay into the Plan. See Class Plaintiff's reply, filed November 20, 1997, exhibits B through D. However, as the Defendants note, the complaint indicates that the plaintiffs in Gonzales, including Mr. Smith, filed suit as individual beneficiaries of the Plan, not as fiduciaries of the Plan.

I conclude that the fiduciary-beneficiary exception is applicable to the Gonzales documents. The plaintiffs in Gonzales clearly were acting on behalf of the Plan and its beneficiaries in pursuing that litigation, even though they designated themselves as individual Plan beneficiaries seeking relief as individuals. The Gonzales plaintiffs sought to recover a substantial asset for the benefit of the Plan and all Plan beneficiaries, and did not seek individual relief. Their efforts on behalf of the plan are closely akin to those of a plan fiduciary dealing with assets of a plan. Communications between the Gonzales plaintiffs and their attorneys were intended to assist in the administration of the Plan in a very fundamental respect—the recovery of a ten million dollar asset for the Plan. Under these circumstances, the class Plaintiff in this case is entitled to discover the Gonzales documents because he is entitled to know how a case pursued on behalf of the Plan and its beneficiaries, and purportedly settled on behalf of the Plan and its beneficiaries, was handled.

*3. Is the work product privilege applicable, despite the applicability of the fiduciary-beneficiary exception?* Rothgerber argues that even if the fiduciary-beneficiary exception is applicable, this exception does not apply to documents covered by the work product privilege. Most courts that have examined the question have said that the fiduciary-beneficiary exception does not automatically cover documents shielded by the work product privilege. *See, e.g., Donovan v. Fitzsimmons,* 90 F.R.D. 583, 586–88 (N.D.Ill. 1981); *M.A. Everett v. USAir Group, Inc.,* 165 F.R.D. 1, 4 (D.D.C.1995). However, when the documents at issue are related to allegedly improper actions of ERISA fiduciaries, discovery often is permitted despite a claim of work product privilege. *Donovan,* 90 F.R.D. at 588; *Everett,* 165 F.R.D. at 5.

■ Here, the Plaintiff claims that the terms of the settlement of the Gonzales litigation violate ERISA because the settlement constitutes a prohibited transaction under ERISA. The Gonzales plaintiffs' knowledge of the case, their understanding of the potential recovery for the Plan, and the basis for their decision to settle the case under the terms eventually agreed to by the Gonzales parties are fundamental aspects of this claim, just as the materials at issue in *Donovan* and *Everett* were fundamental to the claims in those cases. Under these circumstances, I conclude that the Class Plaintiff is entitled to discover documents from the Gonzales litigation which show the Gonzales plaintiffs' knowledge of the case, their understanding of the potential recovery for the Plan, and the basis for their decision to settle the case under the terms eventually agreed to by the Gonzales parties, despite the claim of work product privilege. This includes documents concerning work done for Rothgerber by David Degann of Alexander & Alexander.

However, as the Plaintiff notes, attorney opinion work product, such as research files and internal legal memoranda, likely should remain protected. If Rothgerber wishes to claim that any of the Gonzales documents are protected by attorney opinion work product, I will require them to file a privilege log as to these documents only, and to submit the documents for *in camera* review, within 15 days of the date of this Order.

*4. Are the Gonzales documents discoverable under the crime fraud exception?* The Plaintiff also argues that the Gonzales documents are discoverable under the crime fraud exception to the attorney client privilege. In light of my conclusion that these documents are subject to the fiduciary-beneficiary exception, and that the work product privilege has, at most, only a very limited applicability, I will not address this argument.

**B. Rothgerber Documents**

The documents reflected on the privilege log referred to as the Rothgerber log are documents held by the Rothgerber firm which concern the Plan, but are not related to the Gonzales litigation. After the Gonzales case was settled, Rothgerber was re-

tained by the Plan to advise the Plan. The Plaintiff claims Rothgerber was involved in advising the Plan concerning the changes in benefit calculations which are the basis of some of the Plaintiff's claims. Rothgerber and the Defendants claim these documents are protected by attorney client privilege and work product privilege. The Plaintiff argues that any documents created prior to September 27, 1994, must be produced, based on Judge Daniel's Order stating that "the fiduciary-beneficiary exception will allow some discovery, provided that the attorneys' work was in furtherance of the objectives of the plan and the beneficiaries who participated in that plan." Transcript of October 4, 1996 hearing, p. 5 (exhibit A to Class Plaintiff's Reply, filed November 20, 1997).

*1. Are some of the pre-September 27, 1994 documents privileged because they concern settlor functions?* The Defendants argue that the fiduciary-beneficiary exception is not applicable to 42 documents, created prior to September 27, 1994, because they concern so-called settlor functions. The Defendants claim these documents are shielded by the attorney client and work product privileges. The privilege log for these 42 documents is attached to the Plaintiff's reply to Cavalcade Defendants' opposition to Plaintiff's motion to compel, at Tab 1 (Tab 1 Privilege Log).

> The fiduciary duty that attaches to the administration of the plan does not usually attach to the employer's decision to form, amend, or terminate a plan. The attorney-client privilege, therefore does attach to attorney-client communications with respect to the non-fiduciary activities of the employer.

*Everett v. USAir Group, Inc.,* 165 F.R.D. 1, 4 (D.D.C.1995) (citations omitted). The Plaintiff does not dispute this point, but notes that a party wishing to shield documents under this rule must demonstrate that the documents at issue are limited to communications in which a sponsoring employer sought "legal counsel solely in its role as employer regarding issues other than plan administration." *Everett v. USAir Group, Inc.,* 165 F.R.D. 1, 4 (D.D.C.1995).

The last two documents described in the Tab 1 Privilege Log were produced in December 1988, and December 1987. These two documents concern a claim by Guy Vawter. The Court previously has ruled that documents related to the Vawter claim are immune from discovery. These two documents need not be produced.

■ With regard to all of the other documents described in the Tab 1 Privilege Log, I find that the Defendants have not met the burden of establishing the applicability of the attorney client privilege because they have not demonstrated that these communications related solely to the employer's settlor functions. These documents were produced between November 1993, and September 1994. In the Summer of 1994, the Plan Committee, members of which act as Plan fiduciaries, voted to change the interest rate used to calculate Plan benefits. Nearly all of the documents in the Tab 1 Privilege Log concern amendments or possible amendments to the Plan. The documents reflect communications between Rothgerber, which represented the Plan, Deloitte & Touche, which was the Plan's actuary and accountant, and officials of Furr's/Bishop's, a COLP company. For the most part, the Furr's/Bishop's officials involved were Kevin Lewis and Carlene Stewart. Alton Smith also appears in the log. These three people all were officials of Furr's/Bishop's as well as members of the Plan Committee. In September 1994, Rothgerber drafted, for the Plan Committee, a letter sent to Deloitte & Touche explaining the interest rate change approved in the Summer of 1994.

In this context, the Defendants privilege log does not establish that the documents at issue solely concern advice to COLP concerning its role as settlor. First, the record clearly shows that Rothgerber represented and advised the Plan, but there is little indication that Rothgerber represented COLP, or was paid by COLP for advice exclusively to COLP. As the Plaintiff points out, it would be unlawful for COLP to take advice from Rothgerber concerning its settlor function, while permitting the Plan to pay Rothgerber for this advice. Second, the COLP officials who were involved in the communications at

issue also were Plan fiduciaries because they were members of the Plan Committee. It has not been demonstrated that these individuals were acting solely as COLP officials when they were involved in these communications. In the context of a change implemented by a vote of the Plan Committee, in consultation with Rothgerber, it is difficult to conclude that the documents at issue were solely related to COLP's settlor functions.

 The Defendants also argue that several of these documents are shielded by the work product privilege, and that the fiduciary-beneficiary exception is not an exception to this privilege. I conclude that the work product privilege is not applicable to these documents. Again, a document is protected by the work product privilege if it was prepared in anticipation of litigation by another party or that party's representative, and was intended to remain confidential. With regard to these documents it is important to note that the work product privilege is available only if the primary motivating purpose behind the creation of the document was to assist in pending or impending litigation. *McEwen v. Digitran Systems, Inc.*, 155 F.R.D. 678, 682 (D.Utah 1994), citing *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Temp.Emer.Ct.App.1985). Here, it is apparent that the primary motivation behind the creation of the documents at issue was either changing the Plan, or considering options for changing the Plan. Of course, the parties may reasonably have anticipated that such changes might lead to litigation. However, such speculation about possible litigation is, at best, a secondary motive and is not sufficient to support a claim of work product privilege.

Except for the documents dated December, 1987, and December, 1988, the documents in the Tab 1 privilege log are not protected by the attorney client or work product privileges because they have not been shown to relate exclusively to COLP's settlor functions.

*2. Are communications between Rothgerber, Cavalcade, and Deloitte & Touche protected by the attorney client and work product privileges?* Rothgerber argues that 33 documents reflecting communications between Rothgerber, Cavalcade, and the accounting firm of Deloitte & Touche (Deloitte) are protected by the attorney client and work product privileges. Deloitte & Touche was the accounting firm retained by COLP and the Plan. Descriptions of these documents from the Rothgerber privilege log can be found at tabs 2 and 3, attached to Plaintiff's reply to Cavalcade Defendants' opposition to Plaintiff's motion to compel, filed November 20, 1997 (Tab 2 and Tab 3 Privilege Logs). The documents at tab 2 are documents exchanged between Cavalcade, Rothgerber, and Deloitte concerning Mr. Aull's claim against the Plan. The documents at tab 3 are documents exchanged between the same parties concerning other matters.

 The fiduciary-beneficiary exception is not applicable to these documents because all of the documents were produced after September 27, 1994. Again, there is no accountant-client privilege under federal law. However,

> [a] client does not automatically waive his attorney-client privilege by turning confidential documents over to his accountant. If the accountant is consulted in connection with the client's obtaining legal advice, the privilege extends to cover confidential documents in the accountant's possession. If the documents were turned over to the accountant for reasons totally unrelated to seeking legal advice, the accountant is viewed as an unrelated third party and the attorney-client privilege as to these formerly confidential documents is waived.

*Eglin Federal Credit Union v. Cantor Fitzgerald Securities Corp.*, 91 F.R.D. 414, 418–19 (N.D.Ga.1981) (citations omitted); *See also, U.S. v. Kovel*, 296 F.2d 918, 922–23 (2nd Cir.1961).

The Plaintiff argues that Deloitte cannot be viewed as a client, for the purpose of the attorney client privilege, and therefore communications with Deloitte amount to communications with a third party and waiver of this privilege. The Plaintiff acknowledges that the work product privilege can extend to accountants, but argues that the work product privilege cannot apply unless: 1) Deloitte was retained by and was acting as an agent

of Rothgerber; 2) There is an engagement letter defining the agency relationship and the work to be performed, and; 3) The primary motivating purpose behind the creation of the documents was to assist in pending or threatened litigation.

■ I conclude that the attorney client and work product privileges can extend to communications with an accountant hired by an attorney's client, rather than the attorney, under the circumstances outlined in *Kovel* and *Eglin*. As the *Kovel* court noted, the expertise of an accountant often is necessary, or highly useful, to an effective consultation between client and lawyer. *Kovel*, 296 F.2d at 922. If the other elements of these privileges are established, information exchanged with the accountant is protected if it is shown that: 1) The accountant was consulted, in confidence, for the purpose of obtaining legal advice from the lawyer, and; 2) The communications between the accountant, client, and the lawyer are reasonably related to the purpose of obtaining confidential legal advice from the lawyer.

The applicability of the privileges should not hinge on whether the lawyer hired the accountant. This criterion does little to ensure that the purposes of the attorney client or work product privileges are served. On the other hand, the *Eglin* and *Kovel* criteria ensure that the purpose of effective legal representation is served, while also limiting the information shielded by privilege to that which is necessary to such representation.

■ The documents listed on the Tab 2 Privilege Log, documents exchanged between Cavalcade, Rothgerber, and Deloitte concerning Mr. Aull's claim against the Plan, are privileged. All of these documents concern preparation of responses to the claim Mr. Aull had asserted against the Plan. The privilege log, and the surrounding circumstances, indicate that the documents were exchanged in confidence and in order to facilitate Rothgerber's ability to give legal advice. Further, Mr. Aull's claim reasonably created an anticipation of litigation, and the documents were prepared to address that possibility.

■ The documents listed on the Tab 3 Privilege Log are not directly related to Mr. Aull's claim against the Plan. Most of these documents are described as addressing changes to the Plan, descriptions of the Plan, or distribution forms. A few entries refer to unspecified benefit claims, while one entry refers to the claim of Teresa Bool. I conclude that the documents at tab 3 for which the Defendants have claimed attorney client privilege are shielded by that privilege. The privilege log and the surrounding circumstances demonstrate that these documents involved the transmission of information to and from Deloitte for the purpose of obtaining legal advice for the Plan, and that the information exchanged reasonably was exchanged in pursuit of that goal.

The Defendants also assert the work product privilege as to many of the documents in the Tab 3 Privilege Log. It appears that the primary motivation behind these documents was to make changes to the Plan, to describe or change the description of the Plan, or to change or issue a distribution form. Those who prepared these documents may have anticipated that litigation might result from them, but the privilege log and the surrounding circumstances indicate that anticipation of litigation was not the primary motivation behind the documents.

■ Again, when documents were prepared for mixed purposes, the work product privilege is available only if the primary motivating purpose was to assist in pending or impending litigation. *McEwen v. Digitran Systems, Inc.*, 155 F.R.D. 678, 682 (D.Ut.1994), citing *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Temp.Emer.Ct.App.1985). None of the documents listed at tab 3 are shielded by the work product privilege because none appear to have been prepared with litigation as a primary motivating factor.

In sum, the Plaintiff's motion to compel is DENIED as to the documents in the Tab 2 Privilege Log. The motion also is DENIED as to the documents in the Tab 3 Privilege Log, except for the two documents for which only the work product privilege is claimed. The motion to compel is GRANTED as to

the documents in the Tab 3 Privilege Log dated October 25, 1995, and June 15, 1995.

*3. Have the Defendants waived the attorney client and work product privileges by claiming that they acted in good faith and on the advice of counsel?* The Plaintiff argues that, to the extent the attorney client or work product privileges may be applicable, the Defendants have waived these privileges by asserting that they acted in good faith or upon the advice of counsel. The Plaintiff says the Defendants have asserted good faith and reliance on the advice of counsel with regard to the change in the Plan in the summer of 1994, which the Plaintiff claims violates ERISA. In addition, the Plaintiff says the Defendants have asserted reliance on the advice of counsel with regard to their denial of Mr. Aull's claim in February, 1995.

 Waiver of the attorney client or work product privileges can occur when the privilege holder asserts a claim or affirmative defense which puts the privileged matter directly at issue. See, e.g., *Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.,* 32 F.3d 851, 862–64 (3rd Cir.1994); *FDIC v. Wise,* 139 F.R.D. 168, 170–72 (D.Colo.1991). Such a waiver most often is found when a party affirmatively relies on privileged matter in asserting a claim or affirmative defense. See, e.g., *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156 (9th Cir.1992) (claim that tax position was reasonable because based on advice of counsel puts that advice at issue, and waives privilege).

 To establish an at issue waiver, the Plaintiff must show: 1) assertion of the privilege was the result of some affirmative act, such as filing suit or assertion of an affirmative defense, by the party claiming the privilege; 2) through this act, the party put the protected information at issue, and; 3) application of the privilege would have denied the opposing party access to information vital to his or her defense. *See, Hearn v. Rhay,* 68 F.R.D. 574 (E.D.Wash.1975); *Ryall v. Appleton Electric Co.,* 153 F.R.D. 660, 662 (D.Colo. 1994). The Defendants and Rothgerber argue that they have not affirmatively asserted good faith or reliance on the advice of counsel in defending against the Plaintiff's claims, and thus have not waived the attorney client

privilege. In addition, they argue that an at issue waiver does not affect claims of work product privilege.

 I conclude that the Defendants actions in this case do not support an at issue waiver of the attorney client privilege. The Defendants note that it is the Plaintiff's burden to establish that the Defendants acted unreasonably or in bad faith in adopting the challenged Plan interpretation. The Defendants' denial of such allegations do not amount to an affirmative act which supports an at issue waiver. Similarly, the fact that Defendant Carlene Stewart has stated in deposition testimony that the Plan Committee relied on advice of counsel in denying Mr. Aull's claim does not establish an at issue waiver as to this advice. This statement alone does not indicate that the Defendants have taken affirmative action to place the advice of the Plan Committee's counsel at issue. To the extent I have concluded that the attorney client and work product privileges are applicable, the Defendants have not waived those privileges.

*4. Plaintiff's Supplemental Submission.* Finally, the Court notes that the Plaintiff has filed a supplemental submission concerning motion to compel compliance with subpoena duces tecum. This submission includes documents executed by Joe A. Gonzales, a plaintiff in the Gonzales litigation. Mr. Gonzales has written to Rothgerber stating that he waives any privilege he may have as to documents concerning the Gonzales case in the possession of Rothgerber, and asks that Rothgerber release the documents to Aull. In light of my conclusions above concerning the Gonzales documents, I conclude that I need not rule on the Plaintiff's claim that Mr. Gonzales' waiver requires Rothgerber to produce the Gonzales documents.

## CONCLUSION

For the reasons discussed above, IT IS ORDERED THAT:

1) The class Plaintiff's motion to compel discovery from Kevin Lewis, filed November 21, 1997, is GRANTED.

2) The Cavalcade Defendants' motion for protective order, which concerns discovery from Kevin Lewis, filed October 29, 1997, is DENIED.

3) The class Plaintiff's motion to compel compliance with subpoena to produce documentary evidence, filed September 26, 1997, is GRANTED as to the 456 documents referred to by the parties as the Gonzales documents, except to the extent that Rothgerber may wish to claim that some of these documents are protected by the attorney opinion work product privilege. To the extent Rothgerber wishes to claim this privilege, Rothgerber shall, within 15 days of the date of this Order, file with the Court a brief of ten pages or less outlining their claim, a privilege log concerning the documents, and a copy of the documents for *in camera* review.

4) The class Plaintiff's motion to compel compliance with subpoena to produce documentary evidence, filed September 26, 1997, is GRANTED as to the documents described in the Tab 1 Privilege Log, except for the two documents dated December, 1988, and December, 1987.

5) The class Plaintiff's motion to compel compliance with subpoena to produce documentary evidence, filed September 26, 1997, is GRANTED as to the two documents described in the Tab 3 Privilege Log, dated October 25, 1995, and June 15, 1995.

6) The class Plaintiff's motion to compel compliance with subpoena to produce documentary evidence, filed September 26, 1997, otherwise is DENIED.