Eleanor M. COONEY, et al.

v.

Robert E. BOOTH, et al.

No. CIV.A. 00–1124.

United States District Court,
E.D. Pennsylvania.

Dec. 6, 2000.

Aloysius J. Staud, Philadelphia, PA, Frederick W. Klepp, Cherry Hill, NJ, Helen E. Cooney Mueller, Cooney & Mueller, Wayne, NJ, for plaintiffs.

Heather E. Hansen, John F. O'Brien, III, O'Brien and Ryan, Plymouth Meeting, PA, Lawrence E. Currier, Goldfein & Joseph, Michele Daniele, Harvey, Pennington, Herting and Renneisen, Ltd., Israel N. Eisenberg, Post and Schell, P.C., Christina Gill Tershakovec, Peter J. Lynch, Christie, Pabarue, Mortensen and Young, Philadelphia, PA, for defendants.

### MEMORANDUM

ROBRENO, District Judge.

Presently before the court is the plaintiffs' motion for protective order regarding defendant Mark Mantell, M.D.'s request to depose Louis Fine, Esq., plaintiffs' prior counsel (doc. no. 31), Dr. Mantell's response to plaintiffs' motion (doc. no. 34), as well as the transcripts of the depositions of plaintiffs Eleanor M. Cooney and Helen E. Cooney–Mueller and the affidavit of Attorney Fine, signed and dated November 22, 2000. The court held a hearing on plaintiffs' motion for protective order on November 27, 2000. The court concludes that the plaintiffs have failed to meet their burden of proof of showing that Attorney Fine's two conversations with defendant Dr. Mantell before Dr. Mantel became a defendant in this case and one conversation after Attorney Fine ceased representing plaintiffs are protected by the attorney-client privilege or the work product doctrine. Furthermore, the court concludes that even if the privilege is applicable, the plaintiffs have waived the attorney-client privilege by putting at issue Dr. Mantell's communications with plaintiff, including those that occurred through Attorney Fine. Therefore, the court will deny plaintiffs' motion for protective order.

### I.

The following represents those facts on which the parties agree. In August 1999, plaintiffs sought the legal advice of Louis Fine, Esq., a Philadelphia attorney, regarding the cause of death of Daniel T. Cooney, Jr. Daniel T. Cooney, Jr., the husband of plaintiff Eleanor M. Cooney and father of plaintiff Helen E. Cooney–Muellar, died following two surgical procedures: one to replace his knee and a second to repair an artery allegedly severed during the first operation. Dr. Mantell, a vascular surgeon and a defendant in this case, performed the second operation. Attorney Fine agreed with plaintiffs to investigate potential medical malpractice committed by medical personnel who treated Mr. Cooney.

Three conversations between Attorney Fine and Dr. Mantell are implicated in this motion. The first conversation occurred via telephone in which Attorney Fine spoke to Dr. Mantell from his office and in the presence of plaintiffs Helen E. Cooney–Muellar and Eleanor M. Cooney. The second conversation occurred shortly thereafter when Attorney Fine alone met Dr. Mantell in person to discuss the medical treatment afforded Daniel T. Cooney, Jr., prior to his death. At the time these two conversations took place, plaintiffs had not yet filed suit naming Dr. Mantell as one of the defendants in the case. Some time following the second conversation, Attorney Fine declined to undertake plaintiffs' representation in this case. The third conversation occurred some time later, after Attorney Fine had stopped acting as plaintiffs' counsel. This last conversation came about when Attorney Fine called Dr. Mantell on the telephone reportedly to discuss the possibility of Dr. Mantell acting as an expert witness for Attorney Fine on a different case.

The plaintiffs, now represented by other counsel, eventually filed a complaint against the doctors who treated the deceased, including Dr. Mantell. Plaintiffs' complaint asserted not only a claim for medical malpractice but also a claim for fraud, misrepresentation, and deception. The plaintiffs' fraud count alleges that Dr. Mantell, along with other doctors who treated Daniel T. Cooney, Jr., "repeatedly willfully and maliciously concealed information, intentionally, and outrageously misrepresented, deceived and lied to the plaintiffs regarding the true cause and nature of [the deceased's] medical condition." *See* Plaintiffs' Complaint, doc. no. 1, Third Count, ¶ 3. The gist of the claim is that after the two surgeries were completed, Dr. Mantell along with others engaged in a "cover up" of the true cause of Mr. Cooney's death.

Dr. Mantell argues that, in order to defend himself from plaintiffs' fraud assertions, the defense must be given an opportunity to depose Attorney Fine and to learn what plaintiffs claim Dr. Mantell told Attorney Fine regarding the events and circumstances surrounding Mr. Cooney's death. Arguing that Attorney Fine's conversations with Dr. Mantell are protected by the attorney-client privilege and the work product doctrine, plaintiffs have responded to this request with a motion for protective order. Because the court finds that the attorney-client privilege and the work product doctrine are not applicable, or if applicable, the privilege has been waived, the court will allow the defendant to depose Attorney Fine for the purpose of inquiring into what Dr. Mantell told Attorney Fine about the events and circumstances of Mr. Cooney's death.

1. Federal Rule of Civil Procedure 26(b)(1) states:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to a claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

## II.

### (a)

■ Federal Rule of Civil Procedure 26(b)(1) requires the disclosure of information as long as it is relevant and not privileged. *Rhone–Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 862 (3d Cir. 1994).[1] To determine whether information is privileged in a diversity action, Federal Rule of Evidence 501 [2] requires that the court apply the state law that determines the rules of decision.[3] *Pearson v. Miller*, 211 F.3d 57, 65–66 (3d Cir.2000). The elements traditionally recognized as establishing the attorney-client privilege are as follows:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Rhone–Poulenc*, 32 F.3d at 862. The party asserting the privilege bears the burden of demonstrating that the privilege applies. *Arcuri v. Trump Taj Mahal Assoc.*, 154 F.R.D. 97, 102 (D.N.J.1994) (citing *In re Grand Jury*, 603 F.2d 469, 474 (3d Cir.1979)).

Fed.R.Civ.P. 26(b)(1).

2. Federal Rule of Evidence 501 reads, in part:

[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.
Fed.R.Evid. 501.

3. While the parties quarrel whether Pennsylvania or New Jersey law applies, both agree that no conflict exists between the law of these jurisdictions.

Although the attorney-client privilege "is worthy of maximum legal protection," *Rhone–Poulenc*, 32 F.3d at 862, not all communications involving counsel are cloaked with the privilege. First, communications which occur between the client and his attorney in the presence of a third person or adverse party are not privileged. *Loutzenhiser v. Doddo*, 436 Pa. 512, 260 A.2d 745, 748 (1970). This limitation to the privilege includes a telephone conversation between an attorney and a client in which a third party also participates. *Yi v. Commonwealth, Dept. of Transp., Bureau of Driver Licensing*, 166 Pa.Cmwlth. 214, 646 A.2d 603, 605 (1994). Second, the attorney-client privilege only protects communications between an attorney and his client, and, therefore, the privilege does not apply for communications between an attorney and a third-party. *Arcuri*, 154 F.R.D. at 102; *see also* 24 Charles Alan Wright and Kenneth W. Graham, *Federal Practice and Procedure* § 5491 ("It is, for example, clear that the attorney's communications with third persons are not privileged.").

(b)

Under these recognized limitations, the three conversations in question in this case do not meet the requirements of the attorney-client privilege. The first conversation, in which Attorney Fine, the plaintiffs, and Dr. Mantell talked over the telephone, is not privileged because a third party, Dr. Mantell, participated in the conversation. *Loutzenhiser*, 260 A.2d at 748. This is true even though Dr. Mantell was not in the room during the conversation but on the telephone. *Yi*, 646 A.2d at 605. The second and third conversations between Attorney Fine and Dr. Mantell are also not privileged because conversations occurring between a client's attorney and a third party are not protected by the privilege. *Arcuri*, 154 F.R.D. at 102.[4]

Plaintiffs seek to come within the protection of the privilege by arguing that a conversation between counsel and a third party during the course of counsel's investigation of the facts of the case is protected by the attorney-client privilege. Pls' Motion, doc. no. 31, at 5. Plaintiffs rely on the decision of Magistrate Judge Rosen in the District of New Jersey in *Arcuri v. Trump Taj Mahal Assoc.*, 154 F.R.D. 97. In that case, Judge Rosen granted a protective order cloaking in the attorney-client privilege not only the advice that counsel had provided to the client but also communications which counsel had with his client about the investigation which counsel had conducted of the facts of the case. *Arcuri*, 154 F.R.D. at 103–04. In that case, the advice of counsel and the basis of that advice was arguably relevant, because the client, a court appointed union monitor, the defendant in the lawsuit, was charged with having breached his fiduciary duty by preferring one group of union members over the others. *Id.* at 98–99. The party requesting the deposition of counsel sought to learn whether the defendant had acted contrary to counsel's advice. Judge Rosen construed the scope of the privilege to extend not only to the advice provided to the client as to the merits of the case, but also to any discussion between counsel and the client about counsel's investigation of the facts of the case. Judge Rosen reasoned that "it would be extraordinarily difficult to separate, in such a situation, the attorney's discussion with his client relating to any cold, hard 'facts' which might be interspersed in such a discussion from the privileged content." *Id.* at 104.

*Arcuri* is distinguishable.[5] The purpose for deposing counsel in *Arcuri* was to learn counsel's advice to the client regarding the merits of the case and the degree to which the facts developed by counsel's investigation supported the advice. *Id.* at 99–100. In this case, on the other hand, the party requesting the deposition is not seeking to learn counsel's advice to the client or the factual basis

---

4. The third conversation between Attorney Fine and Dr. Mantell is also not covered by the attorney-client privilege for the additional reason that Attorney Fine was not acting as plaintiffs' counsel when he made that telephone call. *See Rhone–Poulenc*, 32 F.3d at 862 (indicating that one necessary element to prove the privilege

applies is that "asserted holder of the privilege" must be a "client").

5. *Arcuri* was decided under federal law. The instant case is being decided under Pennsylvania or New Jersey law.

of such advice but only the raw statements made by a third party to counsel during the course of the investigation. Clearly, the *Arcuri* court's concern that discovery of the "hard, cold 'facts'" of the investigation would necessarily disclose the substance of counsel's advice is not present in this case. Therefore, given that the attorney-client privilege should be narrowly construed and extended no further than is necessary to afford protection to a client's communications with his lawyer, the court concludes that allowing inquiry in this case into what counsel was told by a third party will not impinge upon that relationship.

■ Even assuming that the three conversations at issue meet the test for the attorney-client privilege to apply, the court finds that the plaintiffs waived any available privilege when they asserted a fraud claim against Dr. Mantell. The Third Circuit has held that when a party puts an attorney's advice in issue, the party waives the protection afforded under the attorney-client privilege. *Rhone–Poulenc*, 32 F.3d at 863. The *Rhone–Poulenc* court found that "[t]he advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Id.* (citing *North River Insurance Co. v. Philadelphia Reinsurance Corp.*, 797 F.Supp. 363, 370 (D.N.J.1992)).

■ In this case, the plaintiffs have asserted a claim for fraud, misrepresentation, and deceit on the part of Dr. Mantell. Implicit in the fraud claim is the charge that Dr. Mantell allegedly made material misrepresentations with the intent to deceive plaintiffs. *See Benevento v. Life USA Holding, Inc.*, 61 F.Supp.2d 407, 417 fn. 3 (E.D.Pa.1999)(listing six elements for establishing fraud claim under Pennsylvania law).[6] Some of the communications between plaintiffs and Dr. Mantell occurred through Attorney Fine. Therefore, the truth or falsity and the context of all of Dr. Mantell's communications with plaintiffs regarding the events and circumstances leading to Mr. Cooney's death, including those which occurred through Attorney Fine, have been put at issue by plaintiffs. Having put these attorney conversations at issue, the plaintiffs have waived the privilege. *Rhone–Poulenc*, 32 F.3d at 863.[7]

### III.

This court finds that the three conversations at issue in this case are not protected by the attorney-client privilege or the work product doctrine. The first conversation in which Dr. Mantell spoke over the phone with Attorney Fine and plaintiffs Eleanor M. Cooney and Helen E. Cooney–Mueller, are not privileged because a third party, Dr. Mantell, participated in the conversation. The second and third conversations in which Attorney Fine spoke with Dr. Mantell both during and after his representation of plaintiffs are also not privileged because those conversations

---

6. *Benevento v. Life USA Holding, Inc.*, 61 F.Supp.2d at 417 fn. 3, states:

   In Pennsylvania, the tort of intentional or fraudulent misrepresentation consists of the following elements: (1) a false representation of an existing fact or nonprivileged failure to disclose; (2) which is material to the transaction at hand; (3) made with knowledge of its falsity or recklessness as to whether it is true or false; with the intention of misleading another into relying on it; (5) justifiable reliance on the misrepresentation and (6) a resulting injury proximately caused by the reliance.

   61 F.Supp.2d at 417 fn. 3 (citations omitted).

7. At the hearing on their motion, plaintiff asserted that the conversations between Attorney Fine and Dr. Mantell are also protected by the work product doctrine. The work product doctrine protects the mental impressions or legal theories of attorneys prepared in anticipation of litigation. Fed.R.Civ.P. 26(b)(3). However, this protection may be dispelled if the opposing party demonstrates "substantial need" for the information. Fed.R.Civ.P. 26(b)(3). Courts have found that the substantial need test is met in a case where plaintiff's claims have made his attorney's work product an issue in the case. *See, e.g., Resolution Trust Corp. v. Heiserman*, 151 F.R.D. 367, 375 (D.Colo.1993) (stating defendant met substantial need test because documents in question are the basis of plaintiff's complaint).

   Even assuming that plaintiffs have established that the three conversations at issue are work product under Rule 26(b)(3), defendants have demonstrated a substantial need for these statements. Dr. Mantell's statements to Attorney Fine in these three conversations will disclose what Dr. Mantell said to Attorney Fine and, therefore, confirm or undercut plaintiffs' fraud allegations against Dr. Mantell.

were between an attorney and a third party. Even assuming those conversations are protected by the privilege, the court finds that the plaintiffs waived any applicable privilege by filing a claim against Dr. Mantell that put at issue conversations Dr. Mantell had with Attorney Fine. Therefore, defendant Dr. Mantell may depose Attorney Fine for the limited purpose of inquiring into what Dr. Mantell told Attorney Fine about the events and circumstances regarding Mr. Cooney's death.